NEBRASKA NATIONAL BANK, APPELLEE, v. BROOKS R. JOHNSON ET AL., APPELLANTS.

FILED MAY 18, 1897. NO. 7074.

1. **Action for Proceeds of Stolen Property: EVIDENCE.** A plaintiff, in order to recover the proceeds of property stolen by the defendant, is not required to prove the guilt of the latter beyond a reasonable doubt. It is sufficient if he establish the allegations of his petition by a preponderance of the evidence.

2. **Trusts: BANKS: PROCEEDS OF MONEY STOLEN BY JANITOR.** Equity will, as against a servant charged with the care of the offices of the plaintiff, a banking corporation, and the preservation of the property therein, declare a trust in favor of the latter with respect to the proceeds of money stolen from it by the former while in the discharge of his said duty.

3. ———: **EQUITY: JURISDICTION.** The conventional relation of trustee and *cestui que trust*, or other fiduciary relation, is not essential to the jurisdiction of a court of equity to declare and enforce a trust with respect to the property stolen from the beneficial owner.

4. ———. Evidence *held* to support the decree appealed from.

APPEAL from the district court of Douglas county. Heard below before WALTON, J. *Affirmed*.

The opinion contains a statement of the case.

*Clinton N. Powell* and *Howard B. Smith,* for appellants:

Johnson did not sustain a fiduciary relation to the bank in any sense contemplated in the doctrine of trusts. (*Central Nat. Bank v. Connecticut Mutual Ins. Co.,* 104 U. S., 70; *Dillon v. Connecticut Mutual Ins. Co.,* 44 Md., 386.)

·The proof wholly fails to show that Johnson stole the gold, or that he purchased the real estate in question with gold, except as to a small proportion of it, and as a question of law, even if he had stolen the gold and purchased the property with it, no trust can ever arise in property purchased with stolen funds. (*Hawthorne v. Brown,* 3 Sneed [Tenn.], 462; *Ensley v. Balentine,* 4 Humph. [Tenn.], 233; *Campbell v. Drake,* 4 Ired. Eq. [N. Car.], 94; *Pascoag Bank v. Hunt,* 3 Edw. Ch. [N. Y.], 583; *Doyle v. Murphy,* 22 Ill., 508; *Steele v. Clark,* 77 Ill., 475; *Taylor v. Turner,* 87 Ill., 302; *Weer v. Gand,* 88 Ill., 490.)

Not a dollar of any gold that may have been spent by Johnson has been identified as gold lost by the Nebraska National Bank. Without such identification, clearly made, no trust can be established in any case. (*Falsken v. Harkendorf,* 11 Neb., 86; *Baker v. Vining,* 30 Me., 128; *Clarke v. Quackenbos,* 27 Ill., 260; *Brawner v. Staup,* 21 Md., 337; *Parmalee v. Sloan,* 37 Ind., 470; *Shepard v. Pratt,* 32 Ia., 298; *Childs v. Griswold,* 19 Ia., 363; *Stall v. City of Cincinnati,* 16 O. St., 169; *Higgins v. Higgins,* 14 Abb. N. C. [N. Y.], 24; *Taylor v. Plumer,* 3 M. & S. [Eng.], 574; *Harford v. Lloyd,* 20 Beav. [Eng.], 310; *Getty v. Campbell,* 2 Rob. [N. Y.], 666.)

To create a preponderance of evidence in a civil case where a crime is imputed to one party, the other party assumes the burden of not only overcoming the evidence of his opponent, but also the presumption of law in favor of innocence. (*Hills v. Goodyear,* 72 Tenn., 233; *Knowles v. Scribner,* 57 Me., 497; *Ellis v. Buzzell,* 60 Me., 269; *Bradish v. Bliss,* 35 Vt., 326; *Sprague v. Dodge,* 48 Ill., 142; *Decker v. Somerset Ins. Co.,* 66 Me., 408; *Jones v. Greaves,* 26 O. St., 2.)

*J. C. Cowin, contra.*

POST, C. J.

This was an action in the district court for Douglas county, whereby it was sought to impress with a trust in favor of the plaintiff, the Nebraska National Bank, certain property, to-wit, lots 3 and 4 of block 3, Willis Park Place Addition to the city of Omaha, the legal title of which was held by the defendant, Brooks R. Johnson. The cause of action alleged is, in substance, that the defendant above named was, during the month of August, 1890, and for a long time prior thereto, in the employ of the plaintiff bank, his duties being, for a fixed compensation, to sweep the bank's offices, to arrange and care for the furniture therein, and, while in the discharge of his said duties, to watch over, guard, and preserve, to the extent of his ability, all property of the bank, including moneys, notes, and papers; that the said defendant, on the 13th day of August, 1890, while in the discharge of his said duties, and in violation of the trust imposed in him by the plaintiff, wrongfully took, carried away, and appropriated to his own use the sum of $5,000 in gold coin, the property of the said plaintiff; that the said defendant thereafter purchased and improved the property above described with plaintiff's said money so wrongfully taken and converted by him, and that said property is now and has for a long time been occupied and claimed as a homestead by the said defendant and his wife, Ellen Johnson. It was further charged that the said Brooks R. Johnson is wholly insolvent, having no property whatever aside from the real estate here in controversy. The prayer was that the defendants might be adjudged to hold said property in trust for the plaintiff, for a decree confirming the title of the latter, and for general relief. The defendants answered admitting that the said Brooks R. Johnson was employed by the plaintiff as a janitor, in which capacity, and no other, he was acting at the time of the alleged conversion, and denying each and

every other allegation of the petition. A final hearing resulted in a finding for the plaintiff and a decree in accordance with the prayer of the petition, except that the defendant Brooks R. Johnson was found to have contributed the sum of $185 of his own funds to the purchase and improvement of said property, and which sum the plaintiff was required to pay to said defendant as a condition to the granting of the relief sought, and from which judgment and decree the defendants have prosecuted an appeal to this court.

The first proposition argued on this appeal is that inasmuch as plaintiff's right of action depends upon the alleged criminal conversion by the defendant, the same degree of proof is required in order to establish the commission of such act as would be necessary to sustain a conviction upon an indictment or information therefor. That the authorities bearing upon the subject are not altogether harmonious we must confess. It is, for instance, said in 2 Greenleaf, Evidence, section 408, on the authority of *Thurtell v. Beaumont*, 1 Bing. [Eng.], 339, that "where in an action on a policy of insurance the defense is that the property was willfully burned by the plaintiff himself, the crime must be as fully and satisfactorily proved to the jury as would warrant them in finding him guilty on an indictment for the same offense." It is, however, observed in a note to the thirteenth edition of that work that the doctrine of the text above quoted, if supported by the case cited, has been very generally disapproved. There are, it is conceded, American cases which tend to support the contention of counsel, although opposed to the overwhelming weight of authority in this country, and this is particularly true of recent utterances on the subject. As illustrating the trend of judicial opinion upon the question may be cited *Welch v. Jugenheimer*, 56 Ia., 11, in which it is said, referring to an earlier case in the same court: "A more careful examination of the books satisfies us that, whatever may be the rule in actions of slander or libel, where a crime is charged, and a

justification is pleaded, the rule in *Barton v. Thompson* is in conflict with the weight of authority and cannot be sustained on principle, and is therefore overruled." And in *Kane v. Hibernia Ins. Co.*, 39 N. J. Law, 697, the court of errors and appeals, in reversing the judgment of the supreme court, declare that the decision in *Thurtell v. Beaumont, supra*, was made without much consideration, and has never received approval in the English courts. (See also, *Monaghan v. Agricultural Fire Ins. Co.*, 53 Mich., 238; *Finley v. Widner*, 70 N. W. Rep. [Mich.], 433; *Thoreson v. Northwestern Nat. Ins. Co.*, 29 Minn., 107; *United States Express Co. v. Jenkins*, 73 Wis., 471; 2 Wharton, Evidence, sec. 1246; Cooley, Torts, 208.) The evidence of the plaintiff, although mainly circumstantial, certainly tends to support the allegations of the petition, and is, we think, ample for that purpose. Respecting the loss of money and the opportunity of defendant to take and appropriate it, there can, upon the record, be no room for controversy. Johnson, the defendant, appears to have been financially embarrassed, and on one occasion or more asked for and secured the payment in advance of his wages, to-wit, $50 per month. He is also shown to have pleaded poverty and to have solicited gratuities in the way of cast-off clothing; yet, notwithstanding that fact, he is shown to have paid out on the lots in controversy, from August 22, 1890, to January 14, 1891, covering a period of less than five months, the sum of $1,635, a large per cent of which was in gold, in addition to which there was evidence tending to prove the expenditure by him within a few months thereafter of the remainder of the $5,000 in question. True, there was evidence offered explanatory in character, and which, had it been credited, would have resulted in a decree for the defendant; but, as already intimated, the finding of the court adverse to his contention must be accepted as conclusive for the purpose of this proceeding.

The other questions discussed are (1) whether the relation of the parties toward each other was a fiduciary one in the sense in which that term is understood and em-

ployed by courts of equity; (2) whether, assuming, as claimed, that the evidence fails to establish any such relation of trust and confidence, will equity interfere for the purpose of declaring in favor of the injured party a trust with respect to property purchased by a thief with the fruits of his larceny.  The propositions implied from the foregoing inquiries, although separately treated by counsel for defendants, are in fact so nearly akin that they may with propriety be discussed together.  It has been held that no trust results in favor of the owner with respect to the proceeds of property stolen by a mere ser- vant, and that the master is in such case restricted in his remedy to an action for damage, and to a prosecution of the thief in a court of criminal jurisdiction.  A review of the cases tending to support that view will not be at- tempted in this connection.  It is sufficient that the doc- trine therein asserted is, in our judgment, indefensible on authority and opposed to the enlightened policy of modern equity jurisprudence.  The doctrine of construct- ive trusts as developed by courts of equity was intended primarily as a remedy for fraud in cases where the estab- lished rules had proved wholly inadequate, and larceny under the circumstances here disclosed is none the less a fraud upon the owner of the property stolen because com- mitted by a servant instead of one who is, in the tech- nical sense of the term, a trustee.  Speaking on that sub- ject, it is said in a recent valuable work: "The subject of constructive trusts is intimately connected with that of frauds; indeed, the basis of all such trusts is fraud, either actual or presumed.  Rightly understood, a constructive trust is only a mode by which courts of equity work out equity and prevent or circumvent fraud and overreach- ing.  There are, therefore, two well defined classes of constructive trusts, corresponding with the two classes of fraud, viz.; (1) Those which are raised in cases of actual fraud, and (2) those raised in cases of presumed or con- structive fraud.  Those of the first class are commonly called trusts *ex maleficio*." (1 Beach, Modern Equity

Jurisprudence, sec. 226.) And in Fetter, Equity (1895), 187, the rule is thus formulated: "When, on the grounds of justice and good conscience, without reference to the intention of the parties, equity considers the holder of the legal estate to be not entitled to enjoy the equitable or beneficial interest, it treats him as a trustee." (See, also, 2 Pomeroy, Equity Jurisprudence, sec. 1053.) In *Newton v. Porter*, 5 Lans. [N. Y.], 416, which was an action in equity to compel the defendants to account for the proceeds of certain stolen bonds acquired by them with notice of the plaintiff's rights, Miller, P. J., said in reversing the decree below dismissing the complaint: "No exception is made in favor of a person who occupies no fiduciary relation to another, and the elementary books generally do not notice any exception from the rule where the money or property has been obtained by means of a felony. It would certainly be an anomaly in the history of legal proceedings, and a grave reflection upon the administration of justice, if a felon could invest the fruits of his crime, or dispose of them in such manner as to place them beyond the reach of the law." In the same case Balcom, J., after a review of the authorities, said: "The court should not refuse to allow a party to recover the avails of property stolen from him on any technical grounds when the merits of the case clearly require that he should recover, and the court should jump all technicalities and be as astute in discovering a remedy for upholding the rights of such a party as the thief is in contriving ways and means to cheat him out of his property, and the avails of it, by changing the same from one kind to another and placing it in the hands of third persons." And the court of appeals, in affirming the judgment of the supreme court, use language equally emphatic as that above quoted. (*Newton v. Porter*, 69 N. Y., 133.) It will be observed from an examination of the cases cited in support of the opposing view that they depend, with few exceptions, upon *Pascoag Bank v. Hunt*, 3 Edw. Ch. [N. Y.], 583, but which, as remarked by IRVINE, C., in *Tecumseh*

*Nat. Bank v. Russell*, 50 Neb., 281, "is directly contrary to the ruling of the same vice chancellor in *Bank of America v. Pollock*, 4 Edw. Ch. [N. Y.], 215, and * * * opposed to the well settled principles governing similar cases."

We are, from an examination of the entire record in this case, unable to perceive any ground for interference with the decree of the district court, which is accordingly

: AFFIRMED.