## MILLER ET AL. *v.* STEPHENSON.

[No. 3,352. Filed Feb. 1, 1901. Rehearing denied June 28, 1901.]

TRIAL.—*Special Findings.— Conclusions.— Garnishment.— Fraud.*—
Defendant purchased cattle of plaintiff and others under false rep-
resentations, and was arrested on the charge of obtaining property
under false pretenses, employed attorneys to defend him, and gave
them for defending him an order for $185 in money and a certificate
of deposit for $250 which had been taken from him at the time of
his arrest. Plaintiff brought action in attachment and garnish-
ment, and the attorneys filed cross-complaint claiming ownership
of the money. The court found that the money was obtained by
defendant from the sale of cattle fraudulently obtained from
plaintiff and others, " but what part of it was received from the
sale of plaintiff's ten head * * * the court cannot state"; that
the attorneys knew at the time they accepted employment and
received the order that plaintiff was claiming that defendant had
defrauded him out of his cattle, and knew that said money and $15
was all the money defendant had. *Held*, that a conclusion of law
that the attorneys were not innocent holders of the order was not
sustained by the findings, it not being shown that the attorneys
knew at the time they rendered the services and accepted the order
that plaintiff was claiming the identical money, or that the money
was derived from the sale of plaintiff's cattle.

From Orange Circuit Court; *H. D. Gibson,* Special
Judge.

Action by Eli B. Stephenson against Charles Miller and
others for the recovery of the purchase price of certain,
cattle obtained under false pretenses. . From a judgment for
plaintiff, defendants appeal. *Reversed.*

*Bayliss Harvey, Perry McCart, W. H. Talbott, F. E.
Gavin, T. P. Davis* and *J. L. Gavin,* for appellants.

*S. H. Mitchell* and *F. P. Cauble,* for appellee.

COMSTOCK, J.—The action was brought by the appellee.
The complaint is in two paragraphs, the first paragraph
being on account and attachment and garnishment, and the
second paragraph being to quiet title to certain money.

The first paragraph of complaint alleged that appellant Miller, defendant below, was indebted to the plaintiff in the sum of $516 for fourteen steers and sought to recover on account as against him.   It makes the officers of the Citizens Bank of Orleans and George M. Albertson parties defendant in attachment and garnishment, the proper affidavit and bond having been filed.   On motion the appellants McCart and Talbott were made parties defendant.   The defendant Miller for answer to the attachment and garnishment proceedings filed a general denial and also a paragraph of answer in which he disclaimed any interest in the subject-matter of the proceedings.   McCart and Talbott filed answer in two paragraphs; the first a general denial to the attachment and garnishment proceedings and to the first and second paragraphs of the complaint.   The second paragraph of answer sets up the following facts:   They allege that they are partners in the general practice of law and that on the — day of July, 1898, and prior to the commencement of this suit, Charles Miller, the defendant herein, employed them to defend him in several cases in which he was charged or about to be charged with obtaining property under false pretense, for which Miller agreed to pay McCart and Talbott $500, and McCart and Talbott agreed and promised Miller for said fee of $500 to defend him in all the cases then pending or which might hereafter be brought and prosecuted against him charging said crime. That Miller as a part payment on said $500 gave to McCart and Talbott an order assigning to them the sum of $185 in money and a certificate of deposit in the Citizens Bank of Orleans for the sum of $250, together with a receipt executed by Albertson for the same.   That prior to the bringing of this attachment and garnishment proceeding they presented the receipt and order to Albertson and demanded said money and certificate, which Albertson refused to deliver to them; they then likewise presented said order to the Citizens Bank of Orleans and demanded the $250 on deposit

there, which said bank refused to deliver to them. That said money in the hands of Albertson and in the Citizens Bank was afterwards paid into court and is the money which was garnisheed by the plaintiff in this case. They further set up the services and the value of the services, denied collusion, etc., and prayed that this money be declared their money.

The second paragraph of complaint alleges that by false pretense, stating the facts, defendant Miller fraudulently procured possession of certain cattle belonging to plaintiff Stephenson, and sold the same for cash and deposited $250 of the money so received in the Citizens Bank of Orleans; that said money is still in said bank. That Miller turned over to said Albertson $185 of the money so derived, and that Albertson still retains said money. Plaintiff further avers that Miller is wholly insolvent. "Wherefore, plaintiff prays the court to quiet title to said money in the name of Eli B. Stephenson, plaintiff herein, and asks judgment for $560 and all other proper relief.

The defendants McCart and Talbott filed a cross-complaint in which the facts set up in their second paragraph of answer are alleged, praying this money be declared their money and paid over to them. Defendants McCart and Talbott filed an additional paragraph of answer and of cross-complaint, alleging substantially the same facts as in the original cross-complaint, with the additional allegation of damages to the amount of $50 arising from the wrongful acts of said Stephenson in bringing this suit. To these paragraphs of cross-complaint demurrers were filed and overruled and exceptions taken. The court made a special finding of facts and stated conclusions of law thereon and rendered judgment for the plaintiff.

The facts as shown by the special findings are substantially as follows: The plaintiff Stephenson was a farmer. and stock raiser; McCart and Talbott were lawyers, part-

ners; defendant Miller was a man of no property, who by means of false pretense induced the following persons to sell and deliver to him on July 13th cattle, as follows: Eli B. Stephenson, fourteen head of the value of $560; Silas Mandlin, five head of the value of $237; J. R. Chastain and other parties enough to make twenty-four head of cattle. In payment of these cattle, Miller, by the name of D. D. Fisher, after representing that he had $4,000 in the Bank of Orleans, gave checks on said bank, which checks were worthless, as no money was on deposit to the credit of defendant Miller, alias Fisher. Three of the cattle obtained from Stephenson were traded to Jonathan Farr. The twenty-four cattle were sold at Louisville stock yards on July 14th for the sum of $920.07. On his person was found $185 cash and a certificate of deposit in the Bank of Orleans for $250, which money and certificate were placed in the hands of George M. Albertson and held by him until delivered by him into court; and the $185 cash and the $250 in bank was derived from the sale of the cattle, "but what part of it was derived from the sale of plaintiff's ten head and the three head received from Farr by trading him four of those received from plaintiff, the court cannot state." That while Miller, under arrest, was being taken from Orleans to Salem by the marshal, they were overtaken by McCart and Talbott, who had been sent for to defend Miller; at that time Stephenson claimed to McCart and Talbott that Miller was the man who had got his cattle, and also stated that all he wanted was his money.

On the morning of the 19th of July, 1898, McCart and Talbott entered into a contract with Miller to defend him against the charges growing out of the cattle transaction, and Miller agreed to pay McCart and Talbott $500 for their services, and to turn over and give to McCart and Talbott the $185 in Albertson's hands and the $250 in the Orleans bank. Miller at the same time gave McCart and Talbott an order directed to Albertson commanding him to turn

over to McCart and Talbott as their property the $185 and the certificate of deposit for the $250 in the Bank of Orleans, and authorized McCart and Talbott to indorse his name on the back of said certificate. Miller also gave McCart and Talbott the receipt which Albertson had given for the $185 and the certificate of deposit. On the afternoon of July 19th, McCart and Talbott presented said order and receipt to Albertson, and demanded the $185 and the certificate of deposit for $250, which said Albertson refused to deliver to McCart and Talbott, who on the same day, exhibited said written order signed by Miller to the cashier of the Bank of Orleans, and demanded the $250 deposited there by Miller, which demand was refused.

Plaintiff herein instituted this action and caused a writ of attachment and garnishment to be issued against and served on Albertson and the Bank of Orleans after the aforesaid assignment had been made.

The court further found that the services performed by McCart and Talbott and to be performed for defendant Miller were reasonably worth $500. That defendant Miller was disposing of the money received from the sale of the cattle with the intention of cheating the plaintiff Stephenson and others from whom he had purchased cattle. "That McCart and Talbott knew at the time of the execution of the written order by Miller, directed to George M. Albertson, to turn over the $185 and the certificate of deposit to said defendants McCart and Talbott as their property, that the plaintiff Stephenson was claiming that the defendant had defrauded him out of his cattle by false pretense and sold the same, and defendants McCart and Talbott knew that said money and $15 in the hands of Port Easley was all the money that defendant Miller then had."

On this state of facts the court stated its conclusions of law as follows: (1) "That the defendant Miller obtained the cattle aforesaid from plaintiff, Stephenson, by reason of criminal false pretenses as defined by §2204 R. S. 1881 and

amendment thereto.  (2)  That the written order executed and delivered by defendant Miller on the morning of the 19th of July, 1898, to defendants McCart and Talbott, and presented by them to George M. Albertson and the Citizens Bank, created an equitable assignment of whatever interest Miller had in the $185 and the certificate of deposit.  (3) The defendants McCart and Talbott, were not innocent holders of the said written order of assignment.  That where one of two innocent persons must suffer by the act of a third he who has enabled such third person to occasion the loss must sustain it.  (4)  The defendant Miller, having obtained the money in the hands of Albertson and the money deposited in the Bank of Orleans from the sale of the cattle obtained from plaintiff and others by reason of criminal false pretenses he, Miller, had no assignable interest in the same.  (5)  While it cannot be said absolutely that the identical money aforesaid was all derived from the sale of plaintiff's cattle, but as the greater amount contains the lesser, the law as this case now stands would presume that it did, and as between the defendants Miller, McCart, and Talbott, and plaintiff, Stephenson, the law is for Stephenson, and he, Stephenson, is entitled to said money, both the $185 and the $250 and have his title thereto quieted."

The appellants have separately assigned as errors numerous rulings of the court, and have excepted to and assigned as error each conclusion of law.

The special findings must show all the facts necessary to warrant the conclusions of law.  If the findings are silent as to any material fact, it will be presumed to be against him on whom the burden rests.  The findings show that McCart and Talbott gave a valuable consideration for the money they claim in this action.  It is found that their services were worth $500; were contracted and in part paid for by the assignment of $185 and the certificate of deposit for $250.  At the time of the execution of the written assignment, McCart and Talbott had agreed to defend Miller, and

had already appeared for him at his preliminary hearing before a justice of the peace. The only facts found to show that they were not innocent holders of the written order of assignment are that they knew at the time of its execution that appellee Stephenson was claiming that the defendant had defrauded him out of his cattle by false pretenses and sold the same; that said money and $15 in the hands of one Port Easley was all that defendant Miller then had. There is no finding that they knew that Stephenson was claiming this identical money, or that they knew that it was derived from the sale of the cattle of Stephenson. There is no finding that the money had been derived from the sale of Stephenson's cattle. The court found that the money in question had been obtained from the sale of cattle fraudulently obtained from the plaintiff and others, and adds "but what part of it was derived from the sale of plaintiff's ten head and the three head received from Farr by trading him four of those received from plaintiff the court cannot state". Nor is it found that they knew that Miller had defrauded the plaintiff out of his cattle.

The third conclusion of law cannot be sustained in the absence of a finding that appellees McCart and Talbott had knowledge before they gave a valuable consideration for the money claimed that Stephenson was claiming the identical money on deposit. The record presents no such findings. It is not enough that evidentiary facts are found. A special finding must find the ultimate facts, and not mere matters of evidence. *Christian Church* v. *Shoemaker,* 20 Ind. App. 321.

The presumption in the case before us is that in the absence of a finding that McCart and Talbott had knowledge that appellee claimed the money in controversy, or that it was derived from the sale of Stephenson's cattle, is that they did not have such knowledge. One who in the usual course of business receives money in payment of a valuable consideration is presumed to receive it without knowl-

edge of the source of the title of him from whom it is received; and if under such circumstances any one seeks to recover it, he must show that it was not received in good faith. Tiedeman on Com. Paper, §1; *Stephens* v. *Board of Education,* 79 N. Y. 183; *Mason* v. *Waite,* 17 Mass. 560; *Justh* v. *National Bank,* 56 N. Y. 478.

Counsel for appellee argues that if one person obtains the money or property of another through fraud or deceit, the title of the owner can not be destroyed by the fraudulent dispossession. That Miller so obtained appellee's property from which he derived the money in question, and that the wrongdoer had no title in the same which he could transfer. They cite in this connection from our Supreme Court *Alexander* v. *Swackhamer,* 105 Ind. 81, 55 Am. Rep. 180; *Curme, etc., Co.* v. *Rauh,* 100 Ind. 247, 251; *Moore* v. *Shields,* 121 Ind. 267.

In the case first named, the court held that the person to whom the property was delivered by means of fraudulent devices did not become the purchaser, even though a sale was intended; and as there was no purchaser there was no *de facto* sale. In the course of the opinion the court says: "If the owner of goods is induced by fraudulent representations to deliver them to an irresponsible purchaser, in pursuance of a contract of sale to him, and such purchaser, while in possession, transfers them 'for a valuable consideration to a third person, who acts in good faith, without notice of the fraud, the title of the good-faith purchaser will prevail over that of the first owner." Citing *Curme, etc., Co.* v. *Rauh, supra,* and *Parrish* v. *Thurston,* 87 Ind. 437.

In *Curme, etc., Co.* v. *Rauh, supra,* it was held that appellants, who claimed the property in dispute as against the original owners, were not *bona fide* purchasers.

In *Moore* v. *Shields,* 121 Ind. 267, it was held that a broker who sells and obtains money for worthless paper which he knows has been fraudulently issued in violation of

law, though he may have paid the money over to his principal, is liable for conversion to the true owner. These cases are not decisive of the question here involved.

The special findings do not find bad faith upon the part of appellants McCart and Talbott, nor their knowledge of fraud upon the part of Miller; nor that the money on deposit was realized from the sale of appellee's property. They do show a valuable consideration issuing from McCart and Talbott. The special findings also fail to sustain the fourth and fifth conclusions of law.

It does not seem necessary to consider the other questions discussed.

For the foregoing reasons stated, the judgment is reversed, and the trial court directed to grant a new trial.

### DISSENTING OPINION ON PETITION FOR REHEARING.

ROBY, J.—The special finding shows the following facts: (1) That appellee was a farmer and stock raiser in Washington county, and prior to July 8, 1898, had never met or known appellant Chas. Miller. (2) That Chas. Miller was at that time a citizen of Orange county, and had been for four years; that he had no occupation; that during said time he was at divers times employed as a farm hand by various persons; that he was a man of no property or money, except such sums as he may have received at divers times for his manual labor as a farm hand. (3) That appellants McCart and Talbott were and are partners engaged in the practice of law in Orange county. (4) That on July 7, 1898, appellant Chas. Miller was in Crawford county making inquiries of various persons "about cattle feeders of about 1,000 pounds" for sale in the neighborhood, and stated that his name was D. D. Fisher, and that he wanted to buy feeding cattle for "a man up in Ohio" who lived about eighty miles from Cincinnati; that he remained in the neighborhood over night, and the next day repeating

the above statements and asserting that he had $4,000 deposited in the Bank of Orleans with which to pay for the cattle he might buy; that he visited the appellee at his farm, and repeated to him all the statements aforesaid; that appellee offered to sell fifteen steers at four cents per pound; that he remained in the neighborhood until the 13th of said month, buying cattle during that time of various persons, and executing checks to them upon the Bank of Orleans in payment, signing such checks "D. D. Fisher"; that the checks were all protested later for want of funds.    (9) That on the 11th of July, relying upon the representations made to him as aforesaid, appellee sold to Miller, by the name of D. D. Fisher, fourteen steers at four cents per pound. (10) That appellee delivered the fourteen steers to Miller at Livonia on the 13th of July. The amount of the purchase price fixed by weight was $559.60.    That Miller made a check for $560.60 upon the Bank of Orleans, adding $1 for cost of collection, and delivered the same to appellee. That appellee in receiving it relied upon the statements of Miller as above set out, and upon his further statement that he had $4,000 on deposit in the bank named.    That the check was signed "D. D. Fisher."    That appellee transferred such check to the Bank of Salem, and that the same was in due time presented to the Bank of Orleans for payment.    That payment was refused, for the reason that there was no such man as D. D. Fisher, and no funds in said bank to his credit.    (11)    That the false pretenses made by Miller and by which he obtained possession of appellee's cattle were such as would induce an ordinarily prudent man to part with the property.    (12)    That Miller by reason of said false pretenses obtained possession of twenty-four head of cattle in all.    That before shipping he traded four of appellee's cattle to one Farr, and received from Farr three other cattle in exchange.    That on July 13th he shipped said cattle to Louisville, Kentucky; that they were unloaded and sold by commission men for $902.07, net, as the

property of D. D. Fisher; that Miller received a check payable to bearer for said sum; that he indorsed the same by the name of D. D. Fisher, and received the money thereon. (14) That on July 14th Miller went to Mitchell, Indiana, and on the 15th to Orleans. That he never had any funds at the Bank of Orleans, or any credit there, or any money or property at said time, either in or out of bank. (15) That soon after reaching Orleans he exhibited sums of money; deposited $250 in the Citizens Bank, receiving a certificate of deposit therefor; paid off debts due from him to divers persons, amounting to about $400. (17) That on July 18th Miller was identified by appellee as D. D. Fisher; that thereupon Miller was arrested by the marshal of Orleans, without any warrant, and searched. That there was found $185 cash on his person and the certificate of deposit in the Orleans Bank for $250. Appellee was with the marshal when the search was made, and then made claim to the certificate and money as his own, as coming from the sale of his cattle. That Miller protested against the marshal or appellee taking such money or certificate, but agreed that George M. Albertson might take and keep the same pending the preliminary examination of Miller on the charge of procuring property under false pretenses, and until some legal disposition was made of such money and certificate. That Albertson took the money and certificate, and kept the same until he brought them into the court below. (18) That Miller was taken to the town of Salem by said marshal and the appellee, without a warrant, and when on the way they were overtaken by appellants McCart and Talbott, who had been sent for to defend him. That appellee then and there claimed to them· that Miller was the man who got his cattle. (19) That July 18th Miller was charged before a justice of the peace with the crime of having obtained appellee's property by false pretenses. That appellants McCart and Talbott appeared as his attorneys; that he waived arraignment and procured a continuance to get witnesses. (20) That on the

19th of July McCart and Talbott made a contract with Miller to defend him against the charge made, for which he agreed to pay them $500 and to turn over to them the certificate of deposit for $250 and the $185 cash held by Albertson to apply on such sum; and that he executed a written order upon Albertson directing him to deliver said property to them. (21) That on the 19th of July McCart and Talbott presented said order to Albertson and demanded said property. That Albertson refused to deliver said property to them, but afterward filed his interpleader and delivered the said property over to the court, where it is now held. That the said order was on said day exhibited to the cashier of the Orleans bank, and a demand made for the $250 evidenced by the certificate of deposit, which demand was refused. That on the same day this action was instituted and a writ of attachment issued against Miller to Orange and Washington counties and duly returned no property found. (22) That on the 22nd of July, summons and garnishment were served on the garnishee defendants. (23) That Miller, when he executed the written order on Albertson, orally authorized McCart and Talbott to indorse his name on the back of the certificate of deposit, but "no indorsement was ever made on said certificate either by Miller, or McCart and Talbott, or either of them, McCart and Talbott never having got possession of said certificate." (24) Miller "was disposing of the money derived from the sale of all the cattle purchased by him, under the false pretenses as aforesaid, at the time of the institution of the attachment, with no intention of paying the plaintiff [appellee] and was disposing of the money derived from the same, with the intention of cheating and swindling the plaintiff and other persons from whom he purchased the cattle." (25) That the money found on Miller and that evidenced by the certificate of deposit was derived from the sale of the cattle purchased, by false pretenses, of appellee and others, "but what part of it was derived from the sale of plaintiff's ten head and the three

head received from Farr, the court can not state." (26) That McCart and Talbott have "ably defended" Miller "in all the criminal proceedings against him, growing out of the transactions of said Miller in purchasing and obtaining said cattle under the false pretenses aforesaid", and that $500 is a reasonable fee for their services. (27) That McCart and Talbott knew when they took the order from Miller, that appellee was claiming that Miller had defrauded him by false pretenses, and that such money and certificate, together with $15 in the hands of one Easly, was all that Miller then had. (29) That the representations made by Miller to the plaintiff in reference to the purchase of said cattle and the giving of said check were made designedly, knowingly, falsely, and feloniously with intent to defraud appellee, who believed the same, relied upon them, and was induced to part with his property thereby, and that the same was true of other persons named from whom cattle had been procured.

The court concluded that the law on the foregoing facts was (1) that the cattle were obtained by criminal false pretenses as defined by §2204 R. S. 1881; (2) that whatever interest Miller had in the money and certificate was transferred to the other appellants; (3) that McCart and Talbott were not innocent holders; (4) that Miller had no interest in the property held by Albertson; (5) that appellee Stephenson was entitled to the $185 in money and the $250 evidenced by the certificate of deposit, and to have his title quieted thereto. There is some matter of an argumentative nature in the conclusions of law which has been eliminated.

The disposition of this appeal depends upon the facts thus found and the law thus stated. The pleadings are sufficiently comprehensive to allow either party any relief to which they might be entitled upon the finding.

Appellants assert that appellee has elected to treat the money derived from the sale of the cattle as the property of Miller. The first paragraph of complaint upon which the

attachment and garnishment were had avers that appellant Miller was indebted to appellee in the sum of $560, which indebtedness was incurred under the name of Fisher in the purchase of fourteen steers. The second paragraph avers the procurement of the property as described in the special finding, the possession by Miller of the money for which he had sold it, and prays that appellee's title to such money be quieted. Authorities are cited as to the effect of an election to pursue one of two inconsistent remedies. This is not the question. The question is, does the record show such an election? The utmost that it shows is a misjoinder of causes of action. It was sought to raise that question by demurrer, which was the proper method. There was no error in overruling such demurrer, as was done. §344 Burns 1894, §341 Horner 1897; *Langsdale* v. *Woollen,* 120 Ind. 16.

The amended complaint has relation to the date of the commencement of the action, and was a matter occurring in the progress of the original case. *Chicago, etc., R. Co.* v. *Bills,* 118 Ind. 221; *School Town* v. *Grant,* 104 Ind. 168; *Evans* v. *Nealis,* 69 Ind. 148.

When Miller was first arrested, appellee claimed the certificate of deposit and the cash as being the proceeds of his cattle. The claim seems to have been persisted in and it became the duty of the court to render such judgment within the issues as should dispose of the case and be just to the parties.

The findings show that the $250 deposited in bank by and the $185 which Miller had upon his person was derived from the sale of cattle purchased by false pretenses as set out; "but what part of it was derived from the sale of plaintiff's ten head and the three head received from Farr the court can not state." That Miller had received more money from the sale of appellee's cattle than the amount on hand is shown. The question now must be considered as one between Miller and the appellee alone. No other per-

son is making any claim to any part of such money.  If appellee can not trace the fund it is because Miller has so commingled it with his own, no matter how procured, as to destroy its identity.  "The rule is elementary that if property, in its original form and state, is covered with a trust in favor of the principal, no change of that state or form can divest it of such trust, or give the agent or trustee converting it, or those who represent him in right, any more valid claim in respect to it than they respectively had before such change."  *Orb* v. *Coapstick*, 136 Ind. 313, 315, and authorities there cited.

The law was very aptly stated by this court as follows: "The true owner of property has the right to have his property restored to him, not as a debt due and owing, but because it is his property wrongfully withheld.  As between the *cestui que trust* and the trustee and all persons claiming under the trustee, except purchasers for value and without notice, all the property belonging to the trust, however much it may have been changed in its form or its nature or character, and all the fruits of such property, whether in its original or altered state, continue to be subject to and affected by the trust.  *  *  *  It was formerly held that these rules came to an end the moment the means of ascertaining the identity of the trust property failed.  *  *  * In the case of trust moneys commingled by the trustee with his own moneys, it was held that money has no ear-marks, and when so commingled the whole became an indistinguishable mass and the means of ascertainment fails.  But equity, adapting itself to the exigencies of such conditions, finally determined that the whole mass of money with which the trust funds were commingled should be treated as a trust." *Windstandley* v. *Second Nat. Bank, etc.,* 13 Ind. App. 544; *Pearce* v. *Dill,* 149 Ind. 136.

A substantial identification is all that is required.  *Shepard* v. *Meridian Bank,* 149 Ind. 532; *Bundy* v. *Town of Monticello,* 84 Ind. 119, 128.  The appellee's cattle were

stolen from him. *Fleming* v. *State,* 136 Ind. 149; *Beasley* v. *State,* 138 Ind. 552, 46 Am. St. 418; *Crum* v. *State,* 148 Ind. 401. The owner of property wrongfully taken has a right to follow it and adopt any act done to it and treat the proceeds as his own. *Neat* v. *Harding,* 4 Eng. Law & Eq. 494. Property unlawfully appropriated is held by the wrongdoer as trustee for the owner, and may be followed so long as it can be identified. *Riehl* v. *Evansville, etc., Assn.,* 104 Ind. 70; *Nebraska Nat. Bank* v. *Johnson,* 51 Neb. 546, 71 N. W. 294.

Applying these legal principles to the facts found, the conclusion is irresistible. The money that was in Miller's possession is not his money. He has no claim upon it. It is a less amount than he realized from the sale of appellee's cattle, and he can get no advantage from his own act in commingling appellee's money. If he were allowed to keep the entire fund as against appellee on account of the possible interest that some third person who is not before the court may have in it, then he would upon the same ground be able to hold the entire fund against the other person and thereby wholly defeat any attempt to regain any part of it. Whatever difficulty there may be in adjusting the rights of appellee to this fund as between himself and other persons who have been similarly defrauded, there can be none as between appellee and Miller. Miller probably would not be selected by the other parties as the guardian of their interests, and he can not be now permitted to assume that position, to his own advantage.

It is not the policy of the law in any case to permit the wrongdoer who commingles goods wrongfully procured to profit thereby. "All the inconvenience of the confusion is thrown upon the person who produces it, and generally it is for him to distinguish his own property or lose it." 6 Am. & Eng. Ency. of Law (2nd ed.) 596.

The wrongdoer forfeits his interests to the other party. 6 Am. & Eng. Ency. of Law, (2nd ed.) 594. *Brackenridge* v. *Holland,* 2 Blackf. 377, 383, 20 Am. Dec. 123.

The finding was sufficient, and the last conclusion of law, in so far as it was a conclusion of law, was correct as against Miller.

Do appellants McCart and Talbott occupy any better position than Miller? If so it can only be as *bona fide* purchasers or transferees for value and without notice.

It is the settled rule that if facts are not found in a special finding they will be presumed as against the party who has the burden of proof. *Rice* v. *City of Evansville,* 108 Ind. 7.

The appellants McCart and Talbott filed answers in the court below setting up good faith, valuable consideration and absence of notice on their part. These allegations are affirmative and the burden of proof upon the record will govern in the case. The record in fact shows such affirmative allegations by said appellants. 5 Am. & Eng. Ency. of Law (2nd ed.) 5. Aside from the "burden of proof upon the record" the law casts the burden upon them.

It is necessary in order to bring a man within the category of a *bona fide* purchaser for him to show (1) that he has acquired a legal title. (2) The party relying upon this defense must show that he gave a valuable consideration. (3) The purchaser must be free from notice up to and including the consummation of his purchase and the full payment of the price. Baily Onus Probandi, 303. 2 Pomeroy's Eq. §752, *et seq.* None of these propositions are established by the findings.

The burden must of necessity be and is upon the claimant, since he knows the facts connected with his purchase as the plaintiff can not be expected to know. *Palmer* v. *Poor,* 121 Ind. 135, 6 L. R. A. 469; *Harbison* v. *Bank,* 28 Ind. 133, 92 Am. Dec. 308; *Zook* v. *Simonson,* 72 Ind. 83; *Baldwin* v. *Fagan,* 83 Ind. 447; *Mitchell* v. *Tomlinson,* 91 Ind. 167; *New* v. *Walker,* 108 Ind. 365, 373.

The defendant "sought to show that he purchased the property from an immediate purchaser for value and with-

out notice of any infirmity in the title of his vendor. The burden of the first issue was upon plaintiff and the burden of the last upon defendant." *Waterbury* v. *Miller,* 13 Ind. App. 197, 209.

The special finding fails to show that appellants McCart and Talbott were innocent purchasers. They therefore are charged with notice of the infirmity of Miller's title, and, as against the appellee, with regard to this money, occupy the same position that Miller does.

Indeed, if the burden of proof were otherwise, the facts displayed are sufficient to establish the negative proposition that they were not innocent purchasers. *Shirk* v. *Neible,* 156 Ind. 66.

This is not a case where money has been received in the usual course of business. Appellants McCart and Talbott have not received anything. In the language of the special finding "Never having got possession of such certificate". The transaction was not a usual one. It was between a man then in custody upon a charge of a very grave crime, of which it has transpired that he was guilty, and his lawyers, who had theretofore acted for and consulted with him relative to the facts. They knew the charge, the situation, and if they did not know whose money it was they were proposing to take, it was their own fault. The law will not permit the money taken from appellee to be used for such purposes and under such circumstances. Said appellants were put on inquiry and are charged with notice. *Mahoney* v. *Gano,* 2 Ind. App. 107. For the reasons given I think the petition for a rehearing should be granted.

Black, C. J.—I am inclined to agree with the conclusion reached by Roby, J., in the foregoing opinion, but the majority adhering to the original decision the petition for a rehearing is overruled.