PIONEER MINING CO. v. TYBERG et al.

(Circuit Court of Appeals, Ninth Circuit. May 26, 1914.)

No. 2338.

1. TRUSTS (§ 95*)—CONSTRUCTIVE TRUSTS—PROPERTY ACQUIRED BY PROCEEDS OF LARCENY.

Where a thief has converted the stolen property into money or other property, a court of equity will impress a trust in invitum upon such money or property in favor of the beneficial owner so long as it has not passed into the hands of a bona fide holder for value without notice; fiduciary relations between the parties not being essential to the jurisdiction in such case.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 145–147; Dec. Dig. § 95.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRUSTS (§ 95*)—CONSTRUCTIVE TRUSTS—PROCEEDS OF STOLEN PROPERTY.
Defendant was employed by plaintiff as foreman of a gang of men working plaintiff's gold mine and had the care and custody of its sluice boxes containing gold dust, nuggets, and amalgam. These contents he stole and converted into money and a bank draft which were found on his person when he was arrested for the larceny and passed into the custody of the court in which he was tried and convicted. *Held*, that defendant bore a trust relation to plaintiff with respect to the property in his charge and that plaintiff could maintain a suit in equity to enjoin payment of its proceeds to him and to declare and enforce a constructive trust thereon.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 145–147; Dec. Dig. § 95.*]

Appeal from the District Court of the United States for the Second Division of the District of Alaska; Cornelius D. Murnane, Judge.

Suit in equity by the Pioneer Mining Company against Johan Tyberg, alias Edwin Johanson, and John Sundback, as Clerk of the District Court for the Second Division of the District of Alaska. Judgment for defendants, and plaintiff appeals. Reversed.

O. D. Cochran and G. J. Lomen, both of Nome, Alaska, Metson, Drew & MacKenzie and E. H. Ryan, all of San Francisco, Cal., for appellant.

O. L. Willett and Frank Oleson, both of Seattle, Wash., George B. Grigsby, of Nome, Alaska, and Berkeley B. Blake, of San Francisco, Cal., for appellees.

Before GILBERT and ROSS, Circuit Judges, and DIETRICH, District Judge.

ROSS, Circuit Judge. This is an appeal from the judgment of the court below dismissing the suit brought therein by the appellant for the establishment and enforcement of a constructive trust in respect to certain money in the hands of the clerk of the court, and for an injunction pendente lite as well as final, and from a final order denying an injunction and discharging the temporary restraining order that had been issued. The court, however, did enter an order directing that the property in controversy remain in the hands of the clerk of the court until its further order, upon the execution on the part of the plaintiff of a supersedeas bond in an amount fixed by the court.

The judgment was entered upon the refusal of the plaintiff in the suit to further amend its complaint after the sustaining of a general demurrer thereto filed by the defendant Tyberg, the appellee here.

The amended complaint, after setting out the corporate capacity of the plaintiff and the official position of the defendant Sundback, alleged in substance that the defendant Tyberg, alias Edwin Johanson, was, during the month of July, 1910, in the employ of the plaintiff company as foreman of the night shift in mining certain specified property of the plaintiff company, situated in the Cape Nome mining district, Alaska, upon which property were certain sluice boxes, with gold dust, nuggets, and amalgam therein, all of which was the property of the plaintiff company; that, as such foreman and employé of the plaintiff,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Tyberg had the care and custody of the said sluice boxes, gold dust, nuggets, and amalgam; and that it was then and there his duty to protect and safeguard the same, and not to remove from the sluice boxes or permit to be removed therefrom the said gold dust, nuggets, or amalgam, notwithstanding which he did, on or about the day mentioned, wrongfully and unlawfully, and without the leave or consent of the plaintiff company, take and carry away from the said sluice boxes the said gold dust, nuggets, and amalgam, to the value of more than $15,000, and concealed the same from the plaintiff, and converted the same to his own use; that thereafter, and in the month of September, 1910, the said Tyberg, after having retorted the amalgam, proceeded to the city of Seattle, in the state of Washington, and there sold to the United States assay officer in that city the said gold dust, nuggets, and amalgam so retorted, receiving therefor a certificate representing its value in the sum of $14,345.02; that thereafter and in the same month the said Tyberg presented the said certificate to the Union Savings & Trust Company for payment and received in payment thereof $5,345.02 in cash and a draft drawn by the said Union Savings & Trust Company on the First National Bank of Portland, Or., in the sum of $9,000, payable to his said alias, Edwin Johanson, or order; that thereafter, and in the same month of September, the said Tyberg was arrested by a deputy United States marshal in the city of Seattle, charged with the larceny of the said gold dust, nuggets, and amalgam, and that the said $5,345.02 in money, and the said draft, the proceeds of the gold dust, nuggets, and amalgam, were found by the marshal in the possession of the defendant Tyberg, and were by the marshal seized as the proceeds of the said stolen property and as such proceeds were transmitted and delivered to the defendant Sundback as clerk of the said court; that thereafter the said clerk caused the said draft so received by him to be cashed, and received in payment thereof the sum of $9,000, its face value, and has ever since had in his possession, as such clerk, the said proceeds, in the aggregate sum of $14,345.02, "and has held the same for and on account of the case of the United States against said Johan Tyberg now adjudicated in said court, and should now hold the same on account of this action"; that the said defendant Tyberg is insolvent and is not now an inhabitant of the district of Alaska, and that the defendant Sundback neither has nor claims any interest in the said proceeds, except as a mere depositary thereof for the use and benefit of the true owner, and holds the same subject to the orders and directions of the said court, and not otherwise; that the defendant Tyberg has by motion requested the said court to return to him the money so in the hands of the said clerk, and unless restrained from so doing he will demand and claim the said proceeds from the said clerk; that by reason of the premises there is due and owing from the said defendant Tyberg to the plaintiff the said sum of $14,345.02, for which he should be made to account, and that a constructive trust has attached thereto in favor of the plaintiff, and that a lien thereon to the extent stated should be declared in favor of the plaintiff, and a decree in its favor therefor entered. The prayer is for such decree, injunctive and general relief, and for costs.

It is contended on behalf of the appellee that the appeal should have been taken to the Supreme Court by virtue of those provisions of the "Compiled Laws of the Territory of Alaska" which provide as follows:

"Sec. 1336. Appeals and writs of error may be taken and prosecuted from final judgments and decrees of the District Court for the District of Alaska or for any division thereof, direct to the Supreme Court of the United States, in the following cases: * * * In all cases which involve the construction or application of the Constitution of the United States. * * *

"Sec. 1337. In all cases other than those in which a writ of error or appeal will lie direct to the Supreme Court of the United States as provided in section thirteen hundred and thirty-six, * * * writs of error and appeals shall lie from the District Court for Alaska or from any division thereof, to the Circuit Court of Appeals for the Ninth Circuit. * * * "

It is sufficient to say concerning that contention that the proper disposition of the case in no way involves the construction or application of any provision of the Constitution of the United States.

[1] It is further insisted on the part of the appellee that the defendant Tyberg sustained no trust relation to the plaintiff company, and for that reason that the case was not within the jurisdiction of a court of equity.

In the case of Ætna Indemnity Company of Hartford, Conn., v. Malone, 89 Neb. 260, 131 N. W. 200, it was held that, in a suit to declare and enforce a constructive trust with respect to stolen property, fiduciary relations between the parties are not essential to the jurisdiction of a court of equity, but that such a court may enjoin a police officer from transferring money taken by him from burglars who procured it by robbing a bank, and may restore it to the owner thereof; the court saying, among other things:

"The first proposition argued by defendants relates to the nature of the case. Is it a suit in equity or an action at law? It was heard below without a jury, over the objection of defendants, and this is urged as error. The main purpose of the litigation, as shown by the petition, was to trace the stolen fund through the burglars into the hands of the police officers and restore it to the owner. It is alleged that the burglars are insolvent. The recovery of a judgment against them was consequently a secondary matter. They had in their possession only a portion of the amount stolen, when searched, and as to that plaintiff was seeking redress by enjoining the policemen from transferring it to others and by establishing a constructive trust. In the petition there was no attempt to describe the particular denominations of money taken from the bank or found in the hands of the burglars or the police officers. There had been opportunity to change the currency into different items. Defendants were no less accountable because their possession grew out of a felony. Confidential relations are not essential to the jurisdiction of a court of equity to declare and enforce a trust with respect to stolen property. It may be traced through the thief into a different form of property and restored to the beneficial owner. In contriving means to cheat an owner out of his property a thief should not be permitted to outstrip the courts in discovering a remedy to restore it when found. Nebraska Nat. Bank v. Johnson, 51 Neb. 546, 71 N. W. 294; Newton v. Porter, 5 Lans. (N. Y.) 416."

In the case of Newton v. Porter et al., 69 N. Y. 133, 25 Am. Rep. 152, the Court of Appeals of that state held that the owner of negotiable securities stolen and afterwards sold by the thief may follow and claim the proceeds in the hands of the felonious taker, or of his assignee with notice; and that the right continues and attaches to any securities or property in which the proceeds are invested, so long as they can be

traced and identified and the rights of a bona fide purchaser do not intervene. The court, after referring to the well-settled equitable doctrine that when a person standing in a fiduciary relation misapplies or converts a trust fund into another species of property the beneficiary will be entitled to the property thus acquired, said:

"It is insisted by the counsel for the defendants that the doctrine which subjects property acquired by the fraudulent misuse of trust moneys by a trustee to the influence of the trust, and converts it into trust property and the wrongdoer into a trustee at the election of the beneficiary, has no application to a case where money or property acquired by felony has been converted into other property. There is, it is said, in such cases, no trust relation between the owner of the stolen property and the thief, and the law will not imply one for the purpose of subjecting the avails of the stolen property to the claim of the owner. It would seem to be an anomaly in the law, if the owner who has been deprived of his property by a larceny should be less favorably situated in a court of equity, in respect to his remedy to recover it, or the property into which it had been converted, than one who, by an abuse of trust, has been injured by the wrongful act of a trustee to whom the possession of trust property has been confided. The law in such a case will raise a trust in invitum out of the transaction, for the very purpose of subjecting the substituted property to the purposes of indemnity and recompense. 'One of the most common cases,' remarks Judge Story, 'in which a court of equity acts upon the ground of implied trusts in invitum, is when a party receives money which he cannot conscientiously withhold from another party.' Sto. Eq. Juris. § 1255. And he states it to be a general principle that 'whenever the property of a party has been wrongfully misapplied, or a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form liable to the rights of the original owner, or the cestui que trust.' Section 1258. See, also, Hill on Trustees, p. 222. We are of opinion that the absence of the conventional relation of trustee and cestui que trust between the plaintiff and the Warners is no obstacle to giving the plaintiff the benefit of the notes and mortgage, or the proceeds in part of the stolen bonds. See Bank of America v. Pollock, 4 Edw. Ch. (N. Y.) 215."

In the case of Lightfoot v. Davis, 198 N. Y. 261, 91 N. E. 582, 29 L. R. A. (N. S.) 119, 139 Am. St. Rep. 817, 19 Ann. Cas. 747, the same court held that the owner of bonds which were stolen could maintain an action in equity commenced upon the discovery of the identity of the thief against his estate for the amount of the bonds and interest thereon from the time of the theft, saying, among other things, that:

"The method by which equity proceeds in all these cases is to turn the wrongdoer into a trustee."

In 3 Pomeroy's Equity Jurisprudence, § 1051, it is said:

"A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form. If one person having money or any kind of property belonging to another in his hands wrongfully uses it for the purchase of lands, taking the title in his own name; or if a trustee or other fiduciary person wrongfully converts the trust fund into a different species of property, taking to himself the title; or if an agent or bailee wrongfully disposes of his principal's securities, and with the proceeds purchases other securities in his own name—in these and all similar cases equity impresses a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrongdoer, but as long as it can be followed and identified in whosesoever hands it may come, except into those of a bona fide purchaser for value and without notice, and the court will enforce the constructive trust for the benefit of the beneficial owner or original cestui que trust who has thus been defrauded. * * * Whenever one person has wrongfully taken the property of another, and converted it

into a new form, or transferred it, the trust arises and follows the property or its proceeds."

And further, in section 1053, it is said:

"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust. The forms and varieties of these trusts, which are termed ex maleficio or ex delicto, are practically without limit. The principle is applied wherever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoer."

[2] Under the averments of the amended bill in the present case, however, we think Tyberg did sustain a trust relation to the plaintiff company. To his care and custody the company committed its sluice boxes containing its gold dust, nuggets, and amalgam, all of which Tyberg as foreman of the night shift undertook to safeguard and protect. Instead of observing and executing that trust, he became himself the thief of the trust property. There is no magic in the mere name of a thing or act; but we find in the Century Dictionary this definition of the word "trustee":

"A person to whom property or funds have been committed in the belief and trust that he will hold and apply the same for the benefit of those who are entitled, according to an expressed intention, either by the parties themselves, or by the deed, will, settlement, or arrangement of another; also, by extension, a person held accountable as if he were expressly a trustee in law."

The foreman of a gang of men is certainly properly accountable for that which was committed to his care and custody, and which the duty he undertook required him to safeguard and protect. The facts averred distinctly show not only that the trust property could be followed, but that it actually was followed and its proceeds found, in cash and in a draft, on the person of the foreman, and that it subsequently passed into the custody of the law, where the draft also was converted into money and where the whole of the proceeds of the trust property still remain. Surely there ought to be no rule of equity why, if the facts be as alleged and as are to be here taken as true, a court of equity should not restore such proceeds to the rightful owner.

In the case of Nebraska National Bank v. Johnson et al., 51 Neb. 546, 71 N. W. 294, the defendant to the bill, which was brought by the Nebraska National Bank, had been employed by the bank as a janitor, "his duties being, for a fixed compensation, to sweep the bank's offices, to arrange and care for the furniture therein, and, while in the discharge of his said duties to watch over, safeguard, and preserve, to the extent of his ability, all property of the bank, including moneys, notes, and papers." While so employed, he appropriated certain of the bank's money and invested it in certain real estate upon which the bank sought

by its bill to impose a constructive trust, which suit the Supreme Court of Nebraska sustained. After disposing of a question in respect to the quantum of proof required in such a case, the court proceeded and held as follows:

"The other questions discussed are: (1) Whether the relation of the parties towards each other was a fiduciary one, in the sense in which that term is understood and employed by courts of equity; (2) whether assuming, as claimed, that the evidence fails to establish any such relation of trust and confidence, will equity interfere for the purpose of declaring, in favor of the injured party, a trust with respect to property purchased by a thief, with the fruits of his larceny? The propositions implied from the foregoing inquiries, although separately treated by counsel for defendants, are in fact so nearly akin that they may with propriety be discussed together. It has been held that no trust results in favor of the owner with respect to the proceeds of property stolen by a mere servant, and that the master is in such case restricted in his remedy to an action for damage, and to a prosecution of the thief in a court of criminal jurisdiction. A review of the cases tending to support that view will not be attempted in this connection. It is sufficient that the doctrine therein asserted is, in our judgment, indefensible on authority, and opposed to the enlightened policy of modern equity jurisprudence. The doctrine of constructive trusts, as developed by courts of equity, was intended primarily as a remedy for fraud in cases where the established rules had proved wholly inadequate; and larceny, under the circumstances here disclosed, is none the less a fraud upon the owner of the property stolen because committed by a servant, instead of one who is, in the technical sense of the term, a trustee. Speaking on that subject, it is said in a recent valuable work that: 'The subject of constructive trusts is intimately connected with that of frauds. Indeed, the basis of all such trusts is fraud, either actual or presumed. Rightly understood, a constructive trust is only a mode by which courts of equity work out equity, and prevent or circumvent fraud and overreaching. There are therefore two well-defined classes of constructive trusts, corresponding with the two classes of fraud, viz.: (1) Those which are raised in cases of actual fraud; and (2) those raised in cases of presumed or constructive fraud. Those of the first class are commonly called "trusts ex maleficio."' 1 Beach, Mod. Eq. Jur. § 226. And in Fetter, Eq. (1895) 187, the rule is thus formulated: 'When on the grounds of justice and good conscience, without reference to the intention of the parties, equity considers the holder of the legal estate to be not entitled to enjoy the equitable or beneficial interest, it treats him as a trustee.' See, also, 3 Pom. Eq. Jur. § 1053."

In the case of Borchert v. Borchert, 132 Wis. 593, 113 N. W. 35, the Supreme Court of Wisconsin, speaking upon the subject of constructive trusts, said:

"An action lies to establish a constructive trust and to recover the subject thereof where the property wrongfully obtained in specie, or in its converted form, still remains in the possession of the wrongdoer. Three: In case of a constructive trust an action lies in equity for its establishment and for an accounting even though the property wrongfully obtained is personal and in specie or in some new form into which it can be definitely traced, is within the reach of a plain remedy at law where it is necessary in order to obtain complete justice for equity jurisdiction to deal with the situation. 3 Pom. Eq. Jur. 1053. This court quite recently held that the better rule is that the cestui que trust may always sue in equity for an accounting. Harrigan v. Gilchrist, 121 Wis. 252, 99 N. W. 909. He may certainly do so where there are special circumstances which in the judgment of the court render equity jurisdiction competent to afford a more efficient remedy than can be obtained at law."

Nor do we think that the fact that the amended bill shows that the appellee Tyberg was charged with the larceny of the appellant com-

pany's property, and that that criminal charge was "adjudicated" in the court below, in any way affects the right of the company to pursue its civil remedy.

The case of Williams v. Dickenson, 28 Fla. 90, 9 South. 847, was a civil action brought to recover damages for the alleged burning of a certain building and fixtures through the alleged criminal act of the defendant to the action, and in which civil action the defendant, among other things, pleaded in abatement of it:

"That the cause of action set forth in plaintiff's declaration is a tort which amounts to a felony, and the defendant has been indicted therefor in the circuit court of Jackson county, and said indictment is still pending and no trial has been had thereof; wherefore defendant prays that said suit be abated."

The trial court having sustained the plaintiff's demurrer to the plea, the ruling came before the Supreme Court of Florida, where that court said:

"This plea seeks to invoke the doctrine held in the English courts—that where a private individual has been damaged in person or property by the tortious act of another, which act amounts to a felony, the matter should be disposed of before the proper criminal tribunal, in order that the justice of the country may be first satisfied in respect to the public offense, before the injured individual can seek civil redress for the private wrong inflicted upon him; the redress of the private wrong being postponed until after the public justice is satisfied. Two reasons for this rule are assigned in England: First. The party injured is relied upon to take the place of public prosecutor. In some cases he has even been required to employ counsel to prosecute on behalf of the crown, and his interest in the accomplishment of public justice is kept alive by postponing the redress of his private grievance. And second, in cases of felony, there was a forfeiture to the crown of the felon's property, and the private individual was not allowed to acquire priority over the crown in satisfaction of his demands upon the property of the felon. But in this country this doctrine of the suspension of the civil remedy in cases of felony has been repudiated by the great weight of the American authorities. Under the system of laws prevailing in the United States the reasons for this rule are entirely absent. Here we have a public officer whose duty it is to prosecute all offenders against the state without reliance upon the injured individual; and here we have no forfeiture of the felon's goods. The civil and the criminal prosecution may therefore go on pari passu, or the one may precede or succeed the other; or, if the criminal prosecution is never commenced at all, the failure to seek public justice is no bar to the private remedy. Neither is an acquittal or conviction upon the criminal charge any bar to the civil action. Cooley, Torts, 86 et seq; Pettingill v. Rideout, 6 N. H. 454 [25 Am. Dec. 473]; Blassingame v. Glaves, 6 B. Mon. [Ky.] 38; Railroad Corp. v. Dana, 1 Gray [Mass.] 83; Howk v. Minnick, 19 Ohio St. 462 [2 Am. Rep. 413]; Newell v. Cowan, 30 Miss. 492. The court below properly sustained the demurrer to the defendant's plea in abatement."

We are further of the opinion that the law did not afford the appellant a full, plain, and adequate remedy. It is expressly conceded in the brief of counsel for the appellee Tyberg that the proceeds of the stolen property, being in the custody of the court, were not subject to legal process; they there saying:

"The authorities are unanimous that property in custodia legis is not subject to legal process."

We think there is nothing in the case of United States v Bitter Root Co., 200 U. S. 451, 26 Sup. Ct. 318, 50 L Ed. 550, relied on by the appellee Tyberg, in conflict with what we here hold. There there was

no trust relation between the government and the Bitter Root Company concerning any of the timber wrongfully cut or disposed of, nor, as was expressly stated by the Supreme Court in that case, was there any pretense "that any specific piece of property was in fact either the same timber or the proceeds of the timber wrongfully cut and disposed of by the defendants, or any of them." But in the case just cited, as well as in that of Angle v. Chicago, St. Paul, etc., Ry. Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55, the court referred with approval to the familiar doctrine that a party who acquires title to property wrongfully may be adjudged a trustee ex maleficio in respect to that property.

Such, in our opinion, is clearly the position of the appellee Tyberg under the allegations of fact contained in the amended complaint. And as the proceeds of the stolen property here involved were accurately and clearly traced and found in the possession of the thief, and passed from his possession into the custody of the law, we regard it as clear that it is not only within the power, but that it is the duty of a court of equity, should the facts prove to be as alleged, to award the owner of the stolen property the proceeds thereof.

In view of what has been said, it becomes unnecessary to further discuss matters embraced by the motions interposed on the part of the appellee.

The judgment and order dissolving the restraining order are reversed, and the cause remanded to the court below, with instructions to reinstate the restraining order and for further proceedings in accordance with this opinion.