# Sprigg, Appellant, v. Commonwealth Title Insurance and Trust Company.

*Equity—Equity jurisdiction—Remedy at law.*

Where no decree is sought but one for the payment of money, which can be as easily recovered in an action at law, and there are no mutual demands, nor complicated accounts nor discovery sought, the case is not one of specific relief, and consequently does not fall within the equity head of granting relief where a recovery in damages would be an inadequate remedy.

*Equity—Equity jurisdiction—Remedy at law—Corporations—Mortgage —Suit against trustee.*

Where a corporation mortgage provides that the trustee shall not certify an issue of bonds until money sufficient to pay the first four coupons has

been paid to the trustee, and the trustee by the direction of the corporation agrees to hold certain of the bonds in trust to secure the performance of a contract on the part of the corporation, without requiring the deposit of any money to pay the first four coupons, the person for whom the bonds are held in trust cannot maintain a bill in equity against the trustee to recover damages for failure to have in hand the money for the coupons, or for alleged false allegations as to title of the mortgaged premises made by the trustee to such person.

Where a trustee of a corporation mortgage agrees not to issue bonds until a sum sufficient to pay the first four coupons are deposited with it, and certain persons to whom the bonds are issued deposit the amount of the four coupons, and subsequently receives such amount back, the trustee is not liable to other parties for such repayment.

*Equity—Equity jurisdiction—Remedy at law—Account render.*

While the act of October 13, 1840, confers concurrent jurisdiction upon courts of equity in all cases where account render previously lay, the jurisdiction of the court which first takes actual cognizance of the controversy becomes exclusive in the absence of any peculiar equitable grounds to the contrary.

Argued March 31, 1903.   Appeal, No. 323, Jan. T., 1902, by plaintiff, from decree of C. P. No. 2, Phila. Co., Dec. T., 1898, No. 381, dismissing bill in equity in case of Carroll Sprigg v. Commonwealth Title Insurance and Trust Company.   Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Bill in equity to enforce an alleged trust and for an account. Before WILTBANK, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*Thomas Leaming,* for appellant.—The bill, being by a cestui qui trust against a trustee praying an account, equitable distribution of trust funds and a surcharge for an inequitable distribution, is within the general jurisdiction of equity: Bispham's Equity, sec. 135, page 197; Rhinelander v. Farmers' Loan & Trust Co., 172 N. Y. 519 (63 N. E. Rep. 599); Frishmuth v. Farmers' Loan & Trust Co., 95 Fed. Rep. 5.

Equity has jurisdiction because there is no adequate remedy at law: Bispham's Equity, p. 528; Reeside v. Reeside, 49 Pa. 322.

The jurisdiction of equity (at least concurrent) is secured by sec. 19 of the Act of October 13, 1840: Adams's App., 113 Pa. 449; Shriver v. Nimick, 41 Pa. 80; Persch v. Quiggle, 57 Pa. 247; Reeside v. Reeside, 49 Pa. 322; Bredin v. Kingland, 4 Watts, 420; McFadden v. Sallada, 6 Pa. 283; Shollenberger's App., 21 Pa. 337.

*I. Hazleton Mirkil* and *Francis E. Brewster*, for appellee.— There is no jurisdiction in equity where the remedy at law is adequate: Koch's App., 93 Pa. 434; Young's App., 3 Penny. 463; Hewitt's App., 88 Pa. 55.

There is no jurisdiction in equity to recover damages for tort: Meres v. Chrisman, 7 B. Monroe (Ky.), 422; Brown v. Wabash Ry. Co., 96 Ill. 297.

In cases where jurisdiction at law and in equity is concurrent, if jurisdiction at law first attaches, suit in equity cannot be brought: 1 Pomeroy's Equity, sec. 179; Ins. Co. v. Bailey, 80 U. S. 616; Bank of Bellows Falls v. Rutland, etc., R. R., 28 Vt. 470.

OPINION BY MR. JUSTICE POTTER, July 9, 1903:

The Standard Coal and Timber Company of West Virginia, claiming to be the owner of a large tract of land in McDowell county, executed and delivered to the Commonwealth Title Insurance and Trust Company of Philadelphia, as trustee, a mortgage or deed of trust, dated May 2, 1892, upon 204,000 acres of mineral and timber lands located in said county and state. This mortgage was given to secure the payment of a series of 1,000 coupon bonds of the coal and timber company, for $1,000 each, amounting in the aggregate to $1,000,000, all bearing the same date, and payable in twenty years, with five per cent interest. There was a provision in the mortgage that " before issuing any of the bonds herein described, there shall be deposited by the party of the first part with the said trustee a sum of money sufficient to pay off the first four coupons (two years' interest) on said bonds. On or before the first days of May and November in each and every year, thereafter while this trust continues, the said company shall deposit with said trustee a sum of money sufficient to pay the interest then maturing on all outstanding bonds." The bonds provided

"this bond shall not become obligatory unless it shall have been certified by the signature of the trustee aforesaid indorsed hereon."

The trust company on June 6, 1892, duly acknowledged its acceptance of the trust, and a large part of the bonds were executed by the coal and timber company and placed in the custody of the trustee before April 29, 1892, but none were certified in accordance with the above provision with the exception of 252 of the bonds under the following circumstances: On February 21, 1893, the firm of Rice Brothers, lumber merchants, of Providence, R. I., entered into a contract with one Howland, for the purchase of timber to be cut from the lands described in the mortgage. Howland was in some way connected with the Standard Coal and Timber Company, and that company was interested in his contract with Rice Brothers, and guaranteed its performance.

For the purpose of procuring machinery and appliances for carrying on its business, the company was in need of the sum of $15,000. The assistant secretary of the company, one Cokefair, applied to the defendant trust company for a loan of that sum, but was refused. He then negotiated with Rice Brothers for the loan of their name and credit, by procuring their notes to be discounted for the benefit of the timber company, and the proceeds to be used in the erection of the needed plant. Before delivering this paper which was by way of accommodation only, the Rice Brothers insisted upon security, and were given an order upon the secretary of the trust company, signed by C. C. Cokefair, assistant secretary, and dated April 29, 1893, directing the trust company to hold in trust or deliver to the order of Rice Brothers, lumber dealers of Providence, R. I., one hundred first mortgage $1,000 bonds of the Standard Coal and Timber Company, in accordance with the terms of the mortgage or trust deed held by them to secure said bonds. Upon receipt of this order, the trust company on the same date by its treasurer, A. A. Stull, wrote the following letter:

"PHILADELPHIA, Pa., April 29, 1893.
"MESSRS. RICE BROTHERS,
    "Providence, R. I.
  "Gentlemen: We are in receipt of order from the Standard

Coal and Timber Company of West Virginia, instructing us to hold in trust for you one hundred first mortgage $1,000 bonds of said company, the same being part of an issue of 1,000 bonds, $1,000,000, all of which are equally secured by a first mortgage or deed of trust, dated May 2, 1892, made to the Commonwealth Title Insurance and Trust Company of Philadelphia, as trustee by the said Standard Coal and Timber Company of West Virginia, covering 204,000 acres of mineral and timber lands located in McDowell County, in said state of West Virginia.

" The company is incorporated under the laws of the state of West Virginia, and the bonds are secured by the first mortgage or deed of trust, now held by us as trustee. Said mortgage or deed of trust, together with certified abstract of title, opinions as to the value of property covered by said mortgage or deed of trust, maps, surveys and other papers relating to the same have been carefully examined and approved by us and are now in our possession.

" We will hold the one hundred (100) bonds subject to your order. " Respectfully yours,

" A. A. STULL, Treasurer."

Thereupon Rice Brothers, claiming to rely upon the assurance contained in this letter, loaned their accommodation promissory notes to the timber company, as had been requested by Cokefair, and as a result sustained a heavy loss.

On September 18, 1893, the trust company resigned its trusteeship, owing to the discovery that the title of the timber company to the mortgaged premises was not good and the securities were therefore of no value. Subsequently the alleged claim of Rice Brothers against the defendant trust company was assigned to Carroll Sprigg, the complainant. On December 31, 1898, Sprigg filed this bill in equity against the trust company setting forth the above facts and praying for :

1. A decree that the plaintiff was entitled to relief and that the trust company was equitably bound to act as trustee and to enforce the terms of the mortgage.

2. A decree that the trust company was bound to pay to the plaintiff the face value of the second, third and fourth coupons on one hundred bonds amounting to $7,500, with interest.

3. A decree ordering the trust company to pay the plaintiff the sum of $7,500, with interest.

Upon the trial of the case it appeared that the trust company, between August 20, 1892, and August 16, 1893, actually certified and issued to various persons 252 bonds of the timber company of the face value of $252,000. Before these bonds were issued, each of the bondholders deposited with the trustee a sum of money sufficient to pay the first four coupons upon the bonds to be issued to him, in all $25,200, and when the bonds were issued, this money was repaid to the bondholders in satisfaction of their coupons. None of the money so paid out by the trustee was received from the Standard Coal and Timber Company and no money was paid to any bondholder except that which he himself had first paid to the trustee.

When these facts were disclosed, complainant, by leave of the court, filed an amended bill, setting them forth, and prayed that the trust company should be required to account as trustee for all moneys deposited with it to pay coupons, and should be surcharged with the sum of $25,200, received for that purpose as above stated.

It appeared upon the trial that Rice Brothers had brought a suit at law in the circuit court of the United States for the eastern district of Pennsylvania, which had been marked to the use of Carroll Sprigg, against the defendant company, and that this suit was based upon the same facts as the bill in equity and was pending and undetermined.

The court below found that the complainant had an adequate remedy at law, and that his bill should therefore be dismissed. Exceptions to this finding were overruled and the bill, as amended, was dismissed. From this decree the complainant has appealed.

The dismissal of the bill is assigned for error.

The plaintiff contends that the defendant violated its duty in allowing any bonds to go out, without first requiring the deposit with it of money sufficient to pay off the first four coupons. But for any such failure the defendant, if liable at all, could respond in damages. This is true also with regard to any allegations as to title. If they were such as to give to the plaintiff any right of action, his redress would be at law, and not in equity.

The bonds in question were never actually issued by the defendant to the plaintiff, and no money was deposited by the mortgagor for the payment of interest upon these bonds, or upon any others. The transaction between the defendant and the holders of such bonds as were actually issued simply amounted to a waiver, or surrender by the parties taking the bonds of the first four coupons.

. This end might have been attained by detaching the coupons, before delivering the bonds. But the result was precisely the same when the parties who took the bonds left on deposit a sum sufficient to pay the coupons, which the defendant had agreed should be paid.

This is not a case of mutual demands, nor of complicated accounts ; nor is any discovery sought. So far as there is any account at all it is unilateral, and the balance is ascertained and undisputed.

" Where no decree is sought but one for the payment of money, which can be as easily recovered in an action at law, the case is not one of specific relief, and consequently does not fall within the equity head of granting relief where a recovery in damages would be an inadequate remedy : " Kauffman's Appeal, 55 Pa. 383, 386.

Where the accounts are all on one side and no discovery is sought, equity will not entertain jurisdiction : Passyunk Bldg.. Assn's. Appeal, 83 Pa. 441. In this case, 1 Story's Eq. section 459, is cited, in which is stated as follows :

· " It may be laid down as a general doctrine that in matters of account arising from privity of contract, courts of equity have a general jurisdiction where there are mutual accounts (and a fortiori where these accounts are complicated), and also where the accounts are on one side, but a discovery is sought, and is material to the relief. And on the other hand where the accounts are all on one side, and no discovery is sought or required, and also where there is a single matter on the side of the plaintiff seeking relief, and mere set-offs on the other side and no discovery is sought or required,—in all such cases courts . of equity will decline taking jurisdiction of the causes."

Equity will not decree an account where the account is a mere matter of charge for a certain number of tons of ore, with no entries on the other side of the account ; this is clearly

the subject of an action of assumspit at law : Grubb's Appeal, 90 Pa. 228.

For other late cases in which equity has refused to take jurisdiction upon the ground that there was an adequate remedy at law, see Keystone Electric Light, etc., Co. v. Peoples' Light, Heat & Power Co., 200 Pa. 366 ; O'Neil v. McKeesport, 201 Pa. 386 ; Baltimore Life Ins. Co. v. Gleisner, 202 Pa. 386 ; Stewart Wire Co. v. Lehigh Coal & Navigation Co., 203 Pa. 474.

We can see nothing in this case which calls for the aid of a court of equity, to ascertain or adjust the claim.

In addition, prior to filing his bill, the appellant brought suit at law in the circuit court of the United States. While the act of October 13, 1840, confers concurrent jurisdiction upon courts of equity in all cases where account render previously lay, the jurisdiction of the court which first takes actual cognizance of the controversy becomes exclusive in the absence of any peculiar equitable ground to the contrary : Pomeroy on Equity (2d ed.), sec. 179 ; Bank of Bellows Falls v. Rutland, etc., R. R. Co., 28 Vt. 470. No such peculiar equitable ground exists here.

The relation of trustee and cestui que trust no doubt exists between the trustee under a corporation mortgage and the bondholders. But the case of Frishmuth v. Farmers' Loan & Trust Co., 95 Fed. Repr. 5, relied on by appellant, while so holding, also decides that an individual bondholder has no standing to maintain a bill based upon that relationship. His suit must be brought on behalf of all the bondholders as well as himself.

In the present case the appellant's assignors never became bondholders. Their entire claim is based upon the letter of April 29, 1893. No bonds were ever issued to them, consequently the appellee never became their trustee in any sense whatever. They may be able to maintain an action of assumpsit upon the contract alleged to be embodied in that letter, or of trespass by reason of some breach of duty or deceit on the part of appellee. In the opinion of Judge DALLAS, quoted in appellee's paper-book, the view is expressed, in which appellant seems to have acquiesced, that if he had any remedy, it was by action of deceit. In any view of the case, the remedy of ap-

pellant was at law and not in equity and the court below committed no error in dismissing the bill.

The assignments of error are overruled and the decree is affirmed.