Argued 10 October, decided 19 December, 1907.

### SUMMERS *v.* GEER.

85 Pac. 513, 93 Pac. 133.

APPEAL—NOTICE—SUFFICIENCY—JUDGMENT—SURPLUSAGE.

1. A reference in a notice of appeal from a judgment to the entry of the judg-
ment in the "judgment docket," while Section 196, B. & C. Comp., requires
the recording of judgments in the journal, which is, by section 583, a book in
which the clerk must enter the proceedings of the court in term time, is a
misdescription of the record intended, and may be disregarded as surplusage
in determining the sufficiency of the notice.

SAME—DESCRIPTION OF PARTY—SUFFICIENCY.

2. A defect in a notice of appeal, arising from the failure to state that the
person named in the notice as appealing is the defeated party in the action, is
not fatal, identity of the person being established under Section 788, subd. 25,
B. & C. Comp., from the identity of name.

SAME—REQUISITES OF NOTICE.

3. A notice of appeal from a judgment containing the name of the court and
the parties, and reciting that the defeated party appeals from a judgment
rendered and "entered of record in the above-entitled court, * * * wherein
and whereby it was ordered and adjudged substantially as follows," followed
by the judgment appealed from, is sufficient under Section 549, B. & C. Comp.,
providing that a notice of appeal shall be sufficient if it contains the title of
the cause, the name of the parties, and notifies the adverse party that an ap-
peal is taken from the judgment, though the omission from the notice of the
words "and cause" after the phrase "in the above-entitled court," creates a
doubt as to whether the judgment complained of was rendered in the case at
bar, and though the word "substantially" qualifying the words "ordered and
adjudged" makes uncertain what purports to be the judgment attempted to
be reviewed.

PUBLIC LANDS—DISPOSAL—OFFICES OF COMMISSIONER AND AGENT.

4. The Governor was made land commissioner in 1878, by Hill's Ann. Laws
1892, section 3595, with power to locate all lands to which the State was entitled.
Subsequently, by Act February 18, 1899 (Laws 1899, p. 156), which repealed sec-
tion 3597 and its amendments of 1895 (Laws 1895, p. 7) and 1899 (Laws 1899, p. 94),

providing for an agent's appointment and fixing his duties, the Governor was made land commissioner, with authority to appoint such agents as might be necessary in the performance of his duties, the agents thus having no specified duties other than to aid the commissioner in locating the lands. *Held*, that the commissioner and agents were not agents of the State for the sale of state lands, and, in an action against them for defrauding a person desiring to buy state lands, allegations that they neglected to prepare and keep for public use a list of base land, and that they refused to receive applications for the purchase of indemnity land, etc., are immaterial, since those matters were not within their duties.

AUTHORITY TO SELL LAND—SELLING LIEU LAND NOT YET SELECTED.

5. Hill's Ann. Laws 1892, section 3597, as amended in 1895 (Laws 1895, p. 7), makes it a duty of the State Land Board to proceed immediately to select lieu lands and perfect title thereto in the State, and keep a list of such as are for sale, etc. Section 3296, B. & C. Comp. (amendment of 1899), provides that applications to purchase state lands can be made only to the State Land Board by filing the application with its clerk. Hill's Ann. Laws 1892, section 3619, authorizing a prospective purchaser to ascertain lands lost to the State, and have the land board select other lands desired by him in lieu thereof, was repealed in 1895, since which time the law has not contemplated sales of indemnity lands or applications for their purchase until they have been selected and title perfected in the State. *Held*, that the land agent or board has no authority to make contracts for the State to sell lieu land not yet selected and to which title has not been perfected, and, if it were optional with the state land agent or board to select such lieu land as a prospective purchaser suggests, upon base to be established by the purchaser, board or agent, the approval by the United States Land Department of the selection would be at the applicant's risk.

FRAUD—ACTION—COMPLAINT—SUFFICIENCY.

6. In an action for fraud against a state land commissioner and agents, a count of a complaint which alleges that plaintiff was led by two of the defendants to buy information of the other that certain school sections lost to the State were mineral in character, when, in fact, they were not mineral in character, and the information was false, and that having selected lieu land thereon, his application was not approved by the United States Land Department, but does not allege that the defendants by whom he was induced to purchase the information, knew the kind of information possessed by the one selling it, nor in any way became liable as guarantors of or parties to the representations made him, does not state a cause of action against them.

PLEADING—DUPLICITY.

7. A count of a complaint in an action for fraud alleged that one of the defendants, a state land agent, with intent to defraud plaintiff, falsely represented himself to be in possession of private records and information as to mineral lands for which the State was entitled to indemnity selections, which information he offered to sell to plaintiff, and pretended that for a certain sum he would furnish to the other land agent for plaintiff's information as to the whereabouts of certain available mineral base land for which indemnity lands were due the State, and which would be approved by the Land Department and Secretary of the Interior, all of which was done with knowledge of its falsity, and that he thereby fraudulently obtained plaintiff's money. *Held*, that, though the terms of a contract are set up as constituting part of the means by which the fraud was consummated, the count was not duplicitous, since recovery was sought only upon the fraud and deceit, while to render a pleading duplicitous it must appear that two or more causes of action are relied upon for a single recovery.

From Marion: GEORGE H. BURNETT, Judge.

Action by George Summers against T. T. Geer, L. B. Geer and W. H. Odell, to recover money obtained from plaintiff by fraud and deceit.   From a judgment for defendants, plaintiff appeals.

A motion to dismiss the appeal was denied.

MOTION OVERRULED: AFFIRMED AS TO T. T. GEER AND L. B. GEER: REVERSED AND REMANDED AS TO W. H. ODELL.

Decided 29 May, 1906.

ON MOTION TO DISMISS THE APPEAL.

85 Pac. 513.

*Mr. George G. Bingham* and *Mr. John W. Reynolds,* for the motion.

*Mr. Myron E. Pogue, contra.*

PER CURIAM: This is a motion to dismiss an appeal.   The notice of appeal, by referring to the first page of the transcript for the title and names of the parties, is as follows:

"In the Circuit Court of the State of Oregon for the County of Marion.   Department No. 1.   George Summers, Plaintiff, v. T. T. Geer, L. B. Geer, and W. H. Odell, Defendants.   To T. T. Geer and to George G. Bingham, Your Attorney of Record, and to L. B. Geer and to George G. Bingham, Your Attorney, and to W. H. Odell and to A. O. Condit and John W. Reynolds, Your Attorneys of Record, in the Above-Entitled Action: You and each of you are hereby notified, and you will hereby please take notice that the plaintiff, George Summers, hereby appeals to the Supreme Court of the State of Oregon from that certain judgment made, rendered and entered of record in the above-entitled court on the 10th day of July, 1905, at page 405, of Book 24, Judgment Docket for Marion County, Or., wherein and whereby it was ordered and adjudged substantially as follows:

'Now on this 10th day of July, 1905, this cause coming on to be heard, plaintiff appearing by M. E. Pogue, his attorney, and the defendant T. T. Geer appearing by George G. Bingham, his attorney, and the defendant L. B. Geer appearing by George G. Bingham, his attorney, and the defendant W. H. Odell appearing by A. O. Condit and John W. Reynolds, his attorneys, and now at this time the plaintiff, by M. E. Pogue, his attorney, announcing to the court that he did not desire to

file a second amended complaint, and that he was satisfied with and could stand on his first amended complaint, and the defendants by their attorneys now move the court for a judgment of dismissal for the failure on the part of plaintiff to file a second amended complaint, and it appearing to the court that the defendants' motion should be allowed, it is therefore ordered and adjudged that plaintiff's action be, and the same is, hereby dismissed, and that the defendants each recover of and from the plaintiff their costs and disbursements herein expended and taxed and allowed at $46.00'—and from the whole and every part of said judgment.   M. E. Pogue, Attorney for Plaintiff."

1. When the notice of appeal is not given in open court, its adequacy is tested by the following rule: "Such notice shall be sufficient if it contains the title of the cause, the names of the parties, and notifies the adverse party or his attorney that an appeal is taken to the supreme or circuit court, as the case may be, from the judgment, order, or decree, or some specified part thereof": Section 549, B. & C. Comp. As all judgments of the circuit court are required to be recorded in the journal (Id. Section 196), which is a book in which the clerk must enter the proceedings of the court in term time (Id. Section 583), the reference in the notice of appeal to the entry of the judgment in the "Judgment Docket" is probably a misdescription of the record intended and all allusion to it may be disregarded as surplusage.

2. It is not stated that the George Summers mentioned in the notice of appeal is the plaintiff in this action. This defect is not fatal for certainty to a common intent in general (5 Am. & Eng. Enc. Law, 2 ed., 799) is the degree of indubitableness required which permits invoking the presumption, that the identity of a person may be established from the identity of name; Section 788, subd. 25, B. & C. Comp.

3. The omission from the notice of the words "and cause" after the phrase "in the above-entitled court" creates a doubt as to whether the judgment complained of was rendered in the case at bar. So, too, the word "substantially," used to qualify the verbs "ordered" and "adjudged," makes uncertain what purports to be the judgment attempted to be reviewed, although

the language employed is designated by quotation marks. "The punctuation of an instrument," says Mr. Tiffany (17 Am. & Eng. Enc. Law, 2 ed., 20), "may be considered when the meaning is doubtful." By rejecting the repugnant words mentioned and applying the rules of construction specified, the notice of appeal assailed comes within the very liberal provisions of the statute regulating its sufficiency.

The motion should therefore be denied, and it is so ordered.

MOTION OVERRULED.

Decided 17 December, 1907.

ON THE MERITS.

93 Pac. 133.

For appellant there was a brief and an oral argument by *Mr. Myron E. Pogue.*

For respondent there was a brief over the names of *Mr. George G. Bingham, Mr. John W. Reynolds* and *Mr. Alva O. Condit,* with oral arguments by *Mr. Bingham* and *Mr. Reynolds.*

Statement by MR. JUSTICE EAKIN.

This suit is brought to recover as damages money obtained from plaintiff by conspiracy and fraud. The complaint consists of 340 pages, and is even too lengthy to include the first count in this statement. It will be sufficient to state generally the ground of plaintiff's claim. From January, 1899, to January, 1903, defendant T. T. Geer was Governor and *ex officio* land commissioner of the State of Oregon, and defendants L. B. Geer and W. H. Odell were state land agents, appointed by the Governor. During that time, especially in 1902, defendants conspired for the purpose of defrauding all persons desiring to purchase indemnity lands from the State by withholding information from them as to the State's rights to indemnity lands in lieu of sections 16 and 36, lost to the State by the creation of forest and Indian reserves, adjustment of State boundaries, and survey of non-navigable lakes, of which there were 82,000 acres, called "lieu land" base. Defendants announced to the public that the State had exhausted its supply of such base lands, and, for the purpose of aiding defendant W. H. Odell

in the sale of information of such sections lost to the State by reason of their mineral character, called "mineral" base, it was the custom of the said T. T. and L. B. Geer to require applicants for the purchase of indemnity lands to furnish base at their own expense, and to refer them to W. H. Odell for information as to such base, to refuse applications for the purchase of lieu land, except through W. H. Odell, and to refuse to give information to applicants as to non-mineral base—all alleged to have been done pursuant to such conspiracy and for the purpose of aiding W. H. Odell to sell such information as to pretended mineral base, and with knowledge of the facts, that T. T. and L. B. Geer failed to prepare and keep for public use a list of such base lands, for which indemnity is due the State. The said L. B. Geer was accustomed to receive the applications to purchase, and collect from such applicants the first payment of the purchase money, and also the compensation to W. H. Odell for such information prior to the selection of said lieu lands, and hold and retain the same until the indemnity lists were furnished the United States Land Office, and when approved by the local land officers to file such applications with the clerk, and cause certificates of sale to issue thereon to such purchaser before such selections were approved by the General Land Office. The allegations of the complaint relating to the conspiracy on the part of T. T. and L. B. Geer were alleged at great length and with particularity. The complaint further states that, pursuant to such conspiracy, W. H. Odell fraudulently represented to the plaintiff that he had information and knowledge of 320 acres of mineral base which he would furnish to plaintiff for $480, and that by reason of the acts and representations of defendants, and relying upon the same and believing them to be true, plaintiff paid to said defendant W. H. Odell the said sum of $480 for such information of alleged mineral base, viz., the east half of section 16, township 14 south, range 31 east, W. M., and, based thereon, plaintiff applied to said L. B. Geer for the purchase of 320 acres in section 32, township 11 south, range 14 east, W. M., from the State as lieu land, and said L. B. Geer procured from the clerk a certifi-

cate of sale therefor in favor of plaintiff; that plaintiff was ignorant of the fact that W. H. Odell was an agent of the State; that said base, so furnished by W. H. Odell was not mineral in character, and had not been lost to the State, and could not be used as base for the purchase of lieu lands; and plaintiff's application was rejected, and the certificate issued to him canceled. Plaintiff claims damages in the sum of $480, with interest, and punitive damages in the sum of $1,000. There are 25 other counts in the complaint, all based upon the same allegations as the first, except that they are upon claims in favor of other persons and assigned to plaintiff. Motions were filed to strike out all the allegations which alleged any acts of defendants T. T. and L. B. Geer tending to show their custom with, or representations to, the public, the greater portion of which were sustained. A general demurrer to the complaint was filed by the defendant W. H. Odell on the ground that several causes of action have been improperly united, and that it does not state facts sufficient to constitute a cause of action, also by the defendants T. T. and L. B. Geer, for the reason that it does not state facts sufficient to constitute a cause of action against them, which were sustained by the court, judgment being rendered thereon dismissing the action.

REVERSED AND REMANDED.

MR. JUSTICE EAKIN, after stating the facts in the foregoing terms, delivered the opinion of the court.

4. It becomes necessary to notice the provisions of the statute as to the power and duties of the Land Commissioner and Land Agent. The Governor was first made Land Commissioner in 1878, with power to locate all lands to which the State was entitled (Hill's Ann. Laws 1892, § 3595), and by Section 3597 he was authorized to appoint an agent to select State lands; this latter section was amended in 1895 by giving more specific directions as to the powers and duties of such Land Agent, and also requiring the State Land Board to ascertain all the losses sustained by the State by reason of the occupation of the sixteenth and thirty-sixth sections and to select lieu land therefor,

and "that a list of such lands so selected be kept in a book accessible to every one, in the clerk's office * * accurately describing the lands for sale and the land for which it was taken in lieu"; this section is a part of Chapter 52 of Hill's Ann. Laws of Oregon, 1892, and was again amended by the legislature in 1899 with additional duties upon the State Land Agent as to such lieu lands and giving to him general supervision of all lands acquired by the State by foreclosure of mortgages, etc.; this amendment was approved and became a law February 17, 1899. Laws 1899, p. 94. At the same term of the legislature a new act was passed relating to the selection and sale of State lands, which was approved by the Governor and became a law on February 18, 1899 (Laws 1899, p. 156), expressly repealing Chapter 52, of which Section 3597 was a part; this act of February 18, 1899, appointed the Governor as Land Commissioner, and empowers him "to locate the lands to which the State of Oregon is entitled," and he "is authorized to appoint such agent or agents as may be necessary in the performance of his duties."

Applications to purchase State lands can be made only to the State Land Board, and must be filed with the clerk of the Board, and the purchase price paid to him, but since February 18, 1899, until February, 1907, the State Land Agent has had no specified duties other than to aid the Commissioner in locating the lands to which the State is entitled. Therefore the allegations in the complaint that the defendants T. T. and L. B. Geer neglected to prepare or file, and keep for public use, a list of such base land, and that they refused to receive applications for the purchase of indemnity lands, or required applicants to furnish base at their own expense, and other matters with reference to certain customs and usages of defendants, are wholly immaterial, as these matters were not within their duties or province; they were not agents of the State for the sale of State lands.

5. Section 3597, Hill's Ann. Laws 1892, as amended in 1895 (Laws 1895, p. 7), made it a duty of the State Land Board

to proceed immediately to select such lieu lands, and perfect title thereto in the State, and keep a list of such that are for sale, together with the base upon which the selection is made. This, however, was to be a list of selections to which title had been perfected and of the lands for sale. By Section 3296, B. & C. Comp. (amendment of 1899), applications to purchase State lands can be made only to the State Land Board by filing the same with the clerk of the Board. It is alleged that T. T. and L. B. Geer directed and advised the clerk of the State Land Board to refer all applicants for lieu lands to L. B. Geer; but the clerk was not the clerk of the Governor or agent, and they had no control or authority over him. The burden of plaintiff's allegations upon the matter of the fraud of T. T. and L. B. Geer is, that it was their custom and usage to represent to the public and plaintiff that there was no available non-mineral base and to refer all applicants to W. H. Odell for information as to mineral base, and that plaintiff, having knowledge of this custom, applied to W. H. Odell for such information to his damage.

In 1902 there was no law authorizing a prospective purchaser to ascertain lands lost to the State, and based thereon have the Board select other lands desired by him in lieu thereof. The act of 1887 (Hill's Ann. Laws 1892, § 3619) did authorize such a proceeding, but this was repealed by the act of 1895 (Laws of 1895, p. 7), since which time the law has not contemplated sales of indemnity lands or applications for their purchase until the same have been selected and title thereto perfected in the State. It was not within the power or authority of the Agent or Board to make contracts for the State to sell lieu lands not yet selected and to which the State had not perfected title. It may have been optional with the State Land Agent or Board to select such lieu land as some prospective purchaser might suggest upon base to be established by such purchaser, board, or agent; but such was not made their duty, and the approval by the United States Land Department of such selections would be at the risk of such applicant.   50 OR.——17

6. Much that is alleged as against T. T. and L. B. Geer is immaterial by reason of the terms of these statutes. Plaintiff seeks to recover, not because he was induced or compelled to pay for information as to available base, but because of the fraud by which he was led to buy information that certain school sections were mineral, when, in fact, such information was false, and such lands were not mineral in character, and because of his consequent loss of the money paid therefor and failure to secure lieu land thereon. It is not alleged as against T. T. and L. B. Geer that they knew the kind of information possessed by W. H. Odell as to the mineral character of the land, or that they represented that the land was mineral, or in any way made themselves liable as guarantors or parties to the representations of W. H. Odell. Therefore the complaint is insufficient to create a liability as against T. T. and L. B. Geer; and the demurrer was properly sustained.

7. As to the sufficiency of the complaint as against W. H. Odell, it is alleged that, with intent to defraud plaintiff, he falsely represented himself to be in the possession of private records and information as to the whereabouts of large tracts of mineral lands, for which the State of Oregon was entitled to indemnity selections, which information he offered to sell to the plaintiff; and that he falsely represented and pretended to plaintiff that for the sum of $480 he would furnish for plaintiff to L. B. Geer, State Land Agent, information as to the whereabouts of 320 acres of available mineral base land, and that such lands were mineral in character and valid base, for which indemnity lands were due the State of Oregon, and would be approved by the Land Department and Secretary of the Interior, all of which, it is alleged, was done with knowledge of its falsity, and that he thereby fraudulently obtained plaintiff's money.

It is claimed that this was objectionable for duplicity in alleging upon breach of contract and upon fraud and deceit. To constitute duplicity in pleading, it is not enough that it appears therefrom that the plaintiff has more than one cause

of action. It must appear that he relies on more than one as the ground of a single recovery. It is not objectionable because he sets up the terms of a contract as constituting part of the means by which the fraud was consummated, so long as he does not seek to recover upon it: *Bingham* v. *Lipman,* 40 Or. 363 (67 Pac. 98); *Raymond* v. *Sturgis,* 23 Conn. 134. But we think the complaint clearly shows that the plaintiff is relying upon the fraud and deceit, and not upon a breach of contract. We understand the rule to be that a pleading is duplicitous only when it so alleges both the contract and deceit that, upon the trial, one recovery may be had upon either the contract or the deceit; but the complaint here plainly discloses that the recovery is sought only for the deceit, and states a good cause of action against W. H. Odell, and his demurrer was improperly sustained.

The judgment, therefore, will be sustained as to T. T. and L. B. Geer, and reversed as to W. H. Odell, and remanded to the lower court for such further proceedings as may be proper and not inconsistent with this opinion.

REVERSED AND REMANDED.