## LEE *v.* GRAM.

### (196 Pac. 373; 209 Pac. 474.)

**Appeal and Error—Necessary Papers must be Framed as Required by Statute.**

1. Under Section 548, Or. L., providing that a judgment or decree may be reviewed as prescribed in that chapter, and not otherwise, Section 550, requiring service of a notice of appeal and the giving of an undertaking, and Section 554, requiring the filing of a transcript, a party desiring to appeal must, at his peril, frame the papers necessary to his appeal as required by statute, or otherwise the court acquires no authority to determine the appeal.

**Appeal and Error—Court cannot Authorize Amendment of Notice of Appeal.**

2. Under Sections 548, 550 and 554, Or. L., authorizing review of judgments or decrees as prescribed in that chapter, and not otherwise, etc., the Supreme Court has no power to authorize appellant to amend her notice of appeal.

**Appeal and Error—Notice of Appeal not Insufficient Because Wrong Date of Judgment Given.**

3. Under Section 550, Or. L., providing that a notice of appeal shall be sufficient if it contains the title, the names of the parties, and notifies the adverse party or his attorney that an appeal is taken from the judgment, order or decree or some specified part thereof, a notice of appeal is not insufficient because by mistake it gives a wrong date as the date of the judgment.

**Appeal and Error—Appellant must Lodge Transcript Showing Appealable Judgment Rendered Within Time for Taking Appeal.**

4. Under Section 550, subdivision 5, Or. L., requiring appeal to be taken within 60 days, and Section 554, requiring the filing of a transcript and providing that after compliance therewith the appellate court shall have jurisdiction, but not otherwise, appellant must lodge in the Supreme Court a transcript showing an appealable judgment rendered within the time allowed for taking an appeal.

**Appeal and Error—When Notice Contains Statutory Matters, Surplusage Does not Prevent Examination of Any Appealable Judgment.**

5. A properly served notice of appeal containing the matters required by Section 550, Or. L., when coupled with a regular undertaking and transcript, brings before the Supreme Court for examination on appeal any appealable judgment in the suit or action therein entitled, though coupled with negligible surplusage.

**Appeal and Error—Notice of Appeal Should Show Appeal from Judgment in Particular Case Without Resorting to Evidence Other Than Transcript.**

6. An inspection of a notice of appeal ought to enable the Supreme Court, by fair construction or reasonable intendment, and without resort to any other evidence than that which the transcript on appeal affords, to determine that the appeal is taken from a decree or judgment in a particular case.

ON THE MERITS.

**Limitation of Actions—Trust Ex Maleficio not Impressed on Estate of Decedent Who in Good Faith Cut and Took Logs from Plaintiff's Lands.**

7. That a decedent in his lifetime wrongfully cut and took logs from plaintiff's land, and converted them to his own use, did not create a trust *ex maleficio* which could be impressed against decedent's estate after the six-year period prescribed by Section 6, Or. L., for actions for trespass, where it did not appear that deceased did not act in good faith, believing the timber to be his own.

**Executors and Administrators—Statute Barring Suit Against Executors Until Presentation and Disallowance of Claim Held Applicable Though Plaintiff has Equities Against Estate.**

8. Section 387, Or. L., providing that an action shall not be commenced against executors or administrators until plaintiff's claim has been presented and disallowed, applies though plaintiff asserts equities against decedent's estate.

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.

MOTION OF RESPONDENT TO DISMISS AND MOTION OF APPELLANT TO AMEND NOTICE. BOTH MOTIONS OVERRULED.

*Mr. E. E. Miller* and *Mr. Harry G. Hoy,* for motion to dismiss.

*Mr. Bradley A. Ewers* and *Mr. Louis E. Schmitt,* for motion to amend.

BURNETT, C. J.—The plaintiff, having been cast in judgment by the Circuit Court of Multnomah County, gave notice of appeal in the following form:

"In the Circuit Court of the State of Oregon for Multnomah County.

No. H—2577.

"Mary V. Lee,

"Plaintiff,

v.

"Mary L. Gram, Executrix of the Estate of George L. Colwell, Deceased,

"Defendant.

"NOTICE OF APPEAL.

"To the Above-named Defendant, Mary L. Gram, Executrix of Estate of Geo. L. Colwell, Deceased, and E. E. Miller and Harry G. Hoy, Her Attorneys:

"You and each of you are hereby notified that the above-named plaintiff, Mary V. Lee, appeals to the Supreme Court of the State of Oregon, from the judgment rendered and entered against her in the above-entitled court and cause on the 28th day of November, 1920, by sustaining the defendant's demurrer to her complaint and dismissing the same and rendering judgment against her for costs and disbursements.

"BRADLEY A. EWERS and
"LOUIS E. SCHMITT,
"Attorneys for Plaintiff and Appellant."

The plaintiff also gave an undertaking on appeal conditioned that she would pay the costs, damages

and disbursements which might be awarded against her on appeal, in which undertaking she referred to the judgment as having been given "on or about the twenty-eighth day of November, 1920." Service of the notice of appeal and of the undertaking was accepted by the attorneys for the defendant, December 14, 1920, and on the same day both documents were filed in the Circuit Court. The transcript filed in this court shows that the judgment which the plaintiff would review was rendered October 28, 1920, instead of November 28th, as stated in the notice of appeal. On this state of the record the defendant moved to dismiss the appeal. The plaintiff moved in this court for an order permitting her to amend her notice of appeal and undertaking, substantially by striking out "November" where the same appears in each document and inserting instead thereof, "October." This motion is supported by an affidavit of one of the attorneys for plaintiff, to the effect that the difference in dates was a mere clerical error on the part of the stenographer in his office in transcribing her shorthand notes, which he did not observe before filing the papers. It is said in *Catlin* v. *Jones,* 56 Or. 492 (108 Pac. 633):

"The giving of proper notice by a party is made by statute a condition precedent to the court's exercise of power to permit a corrective addition, which is limited to the giving of an undertaking, and then only when the party has acted in good faith."

1, 2. It is said in Section 548, Or. L.:

"A judgment or decree may be reviewed as prescribed in this chapter, and not otherwise."

The conditions established by that legislation include the service of the notice of appeal, the giving

of an undertaking (Section 550, Or. L.); and the filing of a transcript (Section 554). As the Supreme Court is a court of limited jurisdiction, a party desiring to appeal must at his peril frame the papers necessary to his appeal as required by the statute; for "not otherwise," in the language of Section 548, can this court acquire authority to decide the questions involved in an appeal. The party appealing must himself without aid from this court supply the documents necessary to his appeal. Being without jurisdiction until he does so, we cannot reach out an aiding hand and help him into court. It follows, therefore, that we cannot give permission to the plaintiff here to amend her notice of appeal, for the reason that such action is beyond our power. The plaintiff's motion to amend the notice and the undertaking must therefore be overruled.

3. While the principle governing appeals is thus strict, nevertheless the decisions of the courts and the legislation affecting the question have been most liberal in practice. Early cases in considerable numbers have dismissed appeals because of defects in the description of the judgment from which the appeal was taken. However, by the act of February 22, 1899 (Laws 1899, p. 227), the legislature codified the matter, and in what now appears as Section 550, Or. L., declared respecting the notice of appeal that—

"Such notice shall be sufficient if it contains the title of the cause, the names of the parties and notifies the adverse party or his attorney that an appeal is taken to the Supreme or Circuit Court, as the case may be, from the judgment, order or decree, or some specified part thereof."

This is the exclusive standard by which the sufficiency of a notice of appeal is to be determined. We may neither add to nor detract therefrom. If we find these ingredients in the paper in question, by force of the statute we are bound to sustain it. Under the authority of *Summers* v. *Geer,* 50 Or. 249 (85 Pac. 513, 93 Pac. 133), we may reject as surplusage all other matter. In that case words referring to the volume and page of the "judgment docket" instead of the Circuit Court journal as the place of record of the judgment, together with other language indicating uncertainty as to the judgment appealed from, were rejected as surplusage and the motion to dismiss the appeal was overruled for the reason that enough remained in the notice as thus rectified to satisfy the terms of Section 550, Or. L., as to the sufficiency of the notice.

Such cases as *Crawford* v. *Wist,* 26 Or. 596 (39 Pac. 218); *Duffy* v. *McMahon,* 30 Or. 306 (47 Pac. 787), and *Hamilton* v. *Butler,* 33 Or. 370 (54 Pac. 200), wherein the appeals were dismissed because of defective description of the judgment in the notice of appeal, were all decided before the passage of the act of February 22, 1899, now embodied in Section 550, Or. L. Under the present statute the only indicia required by law to identify the judgment are the title of the cause, the names of the parties, and notification to the adverse party or his attorney that an appeal is taken to the Supreme or Circuit Court, as the case may be, from the judgment, order, or decree. It is not for us to require more or to demand less.

4. We are not unmindful that an appeal must be taken within sixty days from the entry of the judgment, order or decree appealed from: Section 550,

subd. 5, Or. L. Of course, having appealed, it be-
comes the duty of the party appealing, under Section
554, Or. L., to file a transcript, "and after compliance
with the provisions hereof the appellate court shall
have jurisdiction of the cause, but not otherwise."
It is necessary for the appellant to lodge in this
court a transcript showing an appealable judgment
rendered within the time allowed for taking an ap-
peal. If the defect as to time or nature of the deter-
mination appealed from becomes thus apparent, a
motion to dismiss the appeal will be allowed. Owing
to the several amendments of the statute and the
varying circumstances upon which the different cases
depended, the decisions have not been uniform in
this court, and in some instances they are in apparent
contradiction. For example, in *Salem Traction Co.*
v. *Anson,* 41 Or. 562 (67 Pac. 1015, 69 Pac. 675),
the decree was rendered on June 8th. The notice
of appeal recited that it was rendered on June 18th
and referred to the book and page of the record of
the decree. The undertaking on appeal described
the decree as dated June 8th. The court there held
that it was manifest from the transcript, the under-
taking on appeal, and the notice itself that it was
merely a clerical error which could not have misled
the respondent, and hence overruled the motion to
dismiss. The court cited as a precedent justifying
its ruling *Moorhouse* v. *Donica,* 13 Or. 435 (11 Pac.
71), where giving the wrong date of judgment in the
notice of appeal was held not to vitiate the appeal.
The decision was also aided by the principle that the
undertaking on appeal may be examined in order
to identify the judgment or decree sought to be re-
viewed: *Keady* v. *United Rys. Co.,* 57 Or. 325 (100
Pac. 658, 108 Pac. 197); *McMahon* v. *Hull,* 63 Or.

133 (119 Pac. 348, 124 Pac. 474, 126 Pac. 3); *Holton*
v. *Holton,* 64 Or. 290 (129 Pac. 532, 46 L. R. A. (N. S.)
779; *Meridianal Co.* v. *Bourne,* 87 Or. 324 (160 Pac.
1151, 170 Pac. 521). In *Rohrbacher* v. *Strain,* 95 Or.
1 (177 Pac. 990, 186 Pac. 583), the appellant gave
a notice of appeal in which the date of the decree
was wrongly stated. Based upon that notice, he gave
an undertaking on appeal, and, the time for excep-
tion to the sureties having elapsed, the appeal ap-
parently was perfected. Having discovered his error
of date, however, he took no further proceedings
under that notice, but gave another, correctly de-
scribing the decree as to its date, accompanied by
a new undertaking, and filed a transcript in this
court. A motion to dismiss the second appeal was
made, on the ground that the appellant had taken
one appeal and abandoned it, and consequently could
not appeal again. But, pursuing the liberal policies
of decisions and legislation making it easier to enter
the appellate court, Mr. Chief Justice McBRIDE held
that the motion to dismiss should be overruled, say-
ing that:

"Had the appellant stood upon his first attempted
appeal, it would have been dismissed here for want
of jurisdiction."

On principle this was an erroneous view of the
law; for it held in effect that more must be put into
the notice of appeal than the law requires and that
the incorrect date nullified the other elements of the
notice, which the statute declares are alone essential.
A case on the other extreme is *Lecher* v. *St. Johns,*
74 Or. 558 (146 Pac. 87), where in construing the
notice of appeal Mr. Chief Justice MOORE, writing
the opinion, ignored the title of the cause and the
names of the parties, although made elements of suffi-

ciency by the statute, and rested his estimate of the document solely on the body thereof. On that basis he concluded that the notice "does not state the judgment undertaken to be reviewed was given in any particular action." The statute in its present condition has made the formula for notice of appeal as plain and easy as the petition of the publican who, "standing afar off, would not lift up so much as his eyes unto Heaven, but smote upon his breast, saying, 'God be merciful to me, a sinner' ": Luke xviii: 13.

5. Consequently a properly served notice containing the statutory elements of sufficiency, although cumbered with negligible surplusage, when coupled with a regular undertaking and transcript, will bring before us for examination on appeal any appealable judgment rendered in the suit or action therein entitled.

6. To sum up: As held in *Keady* v. *United Rys. Co.*, 57 Or. 325 (100 Pac. 658, 108 Pac. 197):

"An inspection of a notice of appeal ought to enable the court, by fair construction or reasonable intendment, and without a resort to any other evidence than that which the transcript on appeal affords, to determine that the appeal is taken from the judgment or decree in a particular case."

This necessarily excludes all extraneous or ancillary documents, such as affidavits and the like, in aid or amendment of the record. Further, a notice of appeal which contains all the requisite elements of sufficiency prescribed by Section 550, Or. L., is not necessarily helped or harmed by the addition of nonessential matters such as dates, numbers, or pages of the record.

In view of the liberal legislation upon the subject and the equal leniency of the court in dealing with this matter in the decisions of later years, we conclude that the notice here involved is sufficient according to the canon of the statute beyond the need of amendment. The motion to dismiss is overruled.

MOTION TO DISMISS APPEAL AND MOTION OF APPELLANT TO AMEND NOTICE. BOTH MOTIONS OVERRULED.

Affirmed September 26, 1922.

ON THE MERITS.

(209 Pac. 474.)

AFFIRMED.

For appellant there was a brief over the names of *Mr. L. E. Schmitt* and *Mr. Bradley A. Ewers,* with an oral argument by *Mr. Schmitt.*

For respondent there was a brief over the names of *Mr. Harry G. Hoy* and *Mr. F. E. Miller,* with an oral argument by *Mr. Hoy.*

BURNETT, C. J.—This is a suit by which the plaintiff as owner of certain real property in Clatsop County seeks to charge the estate of the defendant executrix's decedent with the proceeds of timber which she claims the decedent cut and logged from her land in 1911 and 1912. The allegations by which she seeks to charge the decedent are as follows:

"That during the years of 1911 and 1912, as near as plaintiff is able to ascertain, which was during the lifetime of the defendant, George L. Colwell, now deceased, he wrongfully and unlawfully logged off from the above described real estate all of the said fir and spruce timber and sold the same and the

money he realized therefrom he wrongfully and unlawfully converted to his own uses and benefit, without the knowledge *and* consent of the plaintiff."

The plaintiff avers that she is about eighty years of age; that she resides in Portland; and that on account of her infirmities she could not go to the land and only discovered that it had been denuded of its timber when she offered to sell the property in 1918. She then learned that the decedent in his lifetime had a logging railroad built into the community where the land is located, by means of which, according to the complaint, he had cut and removed all of her timber. The averment of the decedent's death June 15, 1917, and the appointment of the defendant as executrix follows.

The plaintiff says that the decedent never informed plaintiff that he had cut the timber and that she had no knowledge of the same; also that the decedent never rendered the plaintiff any account therefor nor has the executrix ever informed the plaintiff that the decedent had cut the timber, nor has she ever rendered any account thereof or paid the plaintiff any money therefor. It is averred that the reasonable value of the timber was $2,750; that the money realized from the sale of the timber by the decedent is part of his estate; and that he held the money in trust for the use and benefit of the plaintiff, which trust is continued to the defendant. Averring that there are ample assets in the hands of the defendant belonging to the estate to pay the claim of the plaintiff in the event that the court should find in her favor, and that she has no speedy and adequate remedy at law, the plaintiff concludes her complaint with a prayer that the executrix be required to render a full account of all the timber cut by her

decedent during his lifetime; that upon her accounting the court shall render a judgment in favor of the plaintiff and against the defendant for the amount found due; that the court declare a trust concerning the amount, with the defendant as executrix; that the latter be enjoined from turning over the assets of the estate to any of the beneficiaries during the pendency of this suit; and for further relief, with costs.

The defendant demurred to the complaint on the ground "that the court has no jurisdiction of the subject of the action; that said complaint does not state facts sufficient to constitute a cause of suit; and that said suit has not been commenced within the time limited by the Oregon Code Procedure." The court sustained the demurrer and as the plaintiff declined to amend her complaint, dismissed the suit, whereupon the plaintiff appealed.

The argument for the plaintiff and the precedents cited in her brief proceed upon the theory that the defendant's decedent stole the timber in question and that consequently he became a trustee *ex maleficio*. For instance, in *Lightfoot* v. *Davis,* 198 N. Y. 261 (91 N. E. 581, 139 Am. St. Rep. 817, 19 Ann. Cas. 747, 29 L. R. A. (N. S.) 119), the defendant's decedent had stolen some bonds belonging to the plaintiff and affirmatively misled the owner in his effort to ascertain what had become of his property. The thief collected the proceeds of these bonds, the exact amount of which was well known, and retained them. In charging the estate, the court based its decision upon two distinct elements of fraud: first, the original larceny; and second, the subsequent concealment of the stolen property and of the sale and receipt of its proceeds. Avoiding the effect of the

statute of limitations, the court held in substance that the adverse possession of the defendant lacked that openness and notoriety essential to title in that respect.

*Arnold* v. *Scott,* 2 Mo. 13 (22 Am. Dec. 433), was a case of trover for money stolen, and depended upon a statute extending the period of limitation if the defendant by any means defeated or obstructed bringing an action within the statutory limit. In the note appended to the report of this case authorities are cited to the effect that the ignorance of the plaintiff which would suspend the statute of limitations must be occasioned or brought about by some improper conduct on the part of the defendant in addition to the original tort.

*Quimby* v. *Blackey,* 63 N. H. 77, had to do with the recovery of a pocketbook which the plaintiff had lost, and the court held that the primary fraud of stealing the property, together with the willful silence of the defendants formed a good answer to the plea of the statute of limitations. The circumstances of that case indicated a duty on the part of the defendants to make a disclosure.

*Leavitt* v. *Shook,* 47 Or. 239 (83 Pac. 391), holds that the open, undisputed possession of personal property for a period longer than that named in the statute of limitations tolls the statute. There was no pretense in that case that the defendant and his immediate vendor had stolen the mare in question, which indicated that in order to suspend the statute, if such result can be attained in this state, there must be evidence of the bad faith attributed to larceny.

*Conditt* v. *Holden,* 92 Ark. 618 (123 S. W. 765, 135 Am. St. Rep. 206), had in it the element of larceny.

*Manaudas* v. *Mann*, 22 Or. 525 (30 Pac. 422), simply holds that the statute does not operate between the *cestui que trust* and his trustee during the existence of an express trust. In the instant case there is no pretense of an express trust.

*Fawcett* v. *Fawcett*, 85 Wis. 332 (55 N. W. 405, 39 Am. St. Rep. 844), treats of a case where contrary to her directions the plaintiff's husband invested her money in land, taking title in his own name. They lived together on the land for twenty years after she discovered the state of the title, when she demanded a conveyance to herself; and it was held that because the husband always admitted her right, the statute did not run against her claim. In other words, it is only from the repudiation of such a trust that the statute begins to run.

A similar case in this court was *Springer* v. *Young*, 14 Or. 280 (12 Pac. 400), where the subject of the suit was a tract of land which the husband during his lifetime had bought with the proceeds of his wife's donation land claim, taking title in himself. The court there held, according to the syllabus, that:

"Possession, to constitute a bar, must be adverse; and neither a husband nor wife can hold adversely to the other, premises of which they are in the joint occupancy as a family. Adverse possession cannot begin until there has been a disseizin, and to constitute a disseizin there must be an actual expulsion of the true owner for the full period prescribed by the statute."

Such cases have no application to the question in hand.

In *Pioneer Min. Co.* v. *Tyberg*, 215 Fed. 501 (L. R. A. 1915B, 442, 131 C. C. A. 549), the confidential clerk of the plaintiff company stole a large

amount of bullion which was in his possession as an employee of the company and exchanged it for money and drafts, which subsequently were brought into court and deposited after they had been taken from his possession on his arrest for the crime. The actual proceeds of the property were clearly followed. They were not mixed with other property so as to destroy their identity; and moreover, one ground on which the court placed the decision was, that being in the custody of the law in the depository of the court, the money was exempt from legal process, so that equity was the only forum in which complete relief could be had.

The case of *Angle* v. *Chicago etc. R. R. Co.*, 151 U. S. 1 (38 L. Ed. 55, 14 Sup. Ct. Rep. 240, see, also, Rose's U. S. Notes), discusses an instance where by fraudulent practices what was known as the Omaha Company broke down a rival concern called the Portage Company, prevented the completion of its road and finally by misrepresentation induced the legislature of Wisconsin to revoke its land grant to the latter company and regrant it to the former. In other words, the Omaha Company had obtained the property of the Portage Company by fraud. The suit was in behalf of the plaintiff, who had prior thereto obtained a judgment at law against the Portage Company, thus establishing his claim, and the real substance of the litigation was a judgment creditor's bill to subject to the payment thereof property of his debtor of which the then defendant had procured possession by fraud. It does not differ materially from any other creditor's bill seeking to charge the property which really belongs to the debtor.

*Warren* v. *Holbrook*, 95 Mich. 185 (54 N. W. 712, 35 Am. St. Rep. 554), *Lamb* v. *Rooney*, 72 Neb. 322

(100 N. W. 410, 117 Am. St. Rep. 795), *Aetna Indemnity Co.* v. *Malone,* 89 Neb. 260 (131 N. W. 200), all involve the element of larceny or larceny by bailee. The same is true of *Newton* v. *Porter,* 69 N. Y. 133 (25 Am. Rep. 152), where it was held that the owner of negotiable securities stolen and afterwards sold by the thief may follow and claim the proceeds thereof in the hands of the felonious taker or of his assignee with notice. The court there held:

"The law in such a case will raise a trust *in invitum* out of the transaction, for the very purpose of subjecting the substituted property to the purposes of indemnity and recompense."

So that after all, the case was made to depend upon the original criminal act of the defendant, upon whom was visited the consequence of a trust *ex maleficio.*

7. This element, common to all of the precedents cited by the plaintiff and here noted, is absent from the pleading under consideration. The averment quoted, charging the decedent, has no ingredient of larceny in it. For all that appears, the offender, if such he was, acted in good faith, innocently believing the timber to be his own. Considering that he built a logging railroad, as stated in the complaint, it would not appear that he acted deceitfully or secretly. *Animo furandi* seems to be a fundamental ingredient of a trust *ex maleficio* in such cases.

A precedent which, in our judgment, is controlling in this instance, is *United States* v. *Bitter Root Development Co.,* 200 U. S. 451 (50 L. Ed. 550, 26 Sup. Ct. Rep. 318, see, also, Rose's U. S. Notes). There, one Daly organized the defendant company with some of his coadjutors and without license of any kind

logged off the timber from a large amount of government land. The United States brought a suit like the instant one, to compel an accounting in equity. The syllabus in part reads as follows:

"Notwithstanding averments in the bill of fraud, conspiracy and violation of trust, if the action is really one of trespass or trover to recover damages for wrongful cutting and conversion of timber from complainant's lands, and there is no question of defendant's financial responsibility and the recovery of a money judgment and not of specific property is sought, complainant's remedy at law is adequate and equity has no jurisdiction; nor can equity take jurisdiction merely because of the difficulty of proving the case on account of various devices alleged to have been used by defendants, or because the principal defendant is an executor of a party, whose estate is solvent, alleged to have been the chief wrongdoer. * *

"The holder of permits to cut timber from certain specified government lands who wilfully and fraudulently cuts from other lands, is not a trustee *ex maleficio* as to timber wrongfully cut, but a mere trespasser and liable for damages in an action at law, and equity has no jurisdiction either on the ground of trusteeship or accounting."

See also *Knorr* v. *Lloyd* (N. J.), 47 Atl. 53; *Sprigg* v. *Commonwealth Title etc. Co.,* 206 Pa. 548 (56 Atl. 33); *Holland* v. *Hallahan,* 211 Pa. 223 (60 Atl. 735); *Grafton* v. *Reed,* 26 W. Va. 437. It is held also in *Planters' Compress Assn.* v. *Haines,* 52 Miss. 469, that there must be a relation *ex contractu,* to justify a relief in equity, and that it does not take cognizance of pure torts.

Premising that the bill presented only a simple charge of trespass and a demand for an accounting in equity for the damages, the court in *Hudson* v.

*Iguano Land & Mining Co.,* 71 W. Va. 402 (76 S. E. 797), said:

"The right to such an accounting can neither precede nor assume the establishment of the trespass itself. It is a sequence dependent upon the existence of the trespass and an issue of that kind belongs exclusively to courts of law in the absence of an independent equity such as only an equitable title rendering the legal remedies inapplicable, inadequate and inappropriate."

The complaint here discloses a pure tort of trespass committed more than six years prior to the beginning of the suit. Section 6, Or. L., prescribes that an action shall be brought within six years for waste or trespass upon real property. No act of the decedent is disclosed as taking place after the cutting of the timber which would in any way affect or extend his liability for the original tort. The cause of action or suit, whichever it was, arose at that time, and nothing has been shown in the complaint enlarging the statute of limitations.

8. Moreover, it is required by Section 387, Or. L., that an action shall not be commenced against an executor or administrator until the claim of the plaintiff has been duly presented to such representative and by him disallowed. This of itself would bar the present litigation, as held in *Zachary* v. *Chambers,* 1 Or. 321; *Wetzstein* v. *Boston etc. Mining Co.,* 28 Mont. 451 (72 Pac. 865); *Ayotte* v. *Nadeau,* 32 Mont. 498 (81 Pac. 145).

The decision of the Circuit Court on the demurrer was correct and is affirmed.                    AFFIRMED.

McBRIDE, HARRIS and RAND, JJ., concur.